Elliot *v.* Shepherd.

## JACOB S. ELLIOT *versus* JOSEPH SHEPHERD.

25 371
85 529

Where the owner of land through which a stream of water passed, had erected thereon a grain mill, and had raised near to it a dam to furnish a water power to drive the mill, and also, further up the stream, had erected another dam to preserve water for the use of the mill below, and afterwards had built a shingle mill on the lower dam near the grist mill, and which was driven by the same water power; and first granted to the plaintiff the grain mill and land whereon it stood, " with the privilege of drawing water from the mill pond sufficient for this or any other grist mill that may be built on the ground that this mill stands on, the grist mill having the privilege of drawing water over every other machinery on the dam;" and next granted to the defendant the shingle mill and land whereon it stood, " with the privilege of water sufficient to drive a shingle saw at all times, except when the water is so low that the grist mill will require it all, and then the shingle mill must stop and not till then;" and afterwards conveyed to the plaintiff the land on which the upper dam had been erected; *it was held,* that the defendant acquired the right to the use of water from the upper as well as from the lower dam, when it could be taken without injury to the rights previously granted to the plaintiff for the use of the grist mill : —

That the defendant had the right to draw water for the use of his shingle mill, whenever such drawing did not thereby injure the plaintiff in the use of his grist mill, although " there were reasonable grounds to believe the water would be needed for the use of the grist mill :" —

That when the grant of the right of water for the use of the shingle mill was made in express terms, there was granted also by operation of law the right to use the means necessary to the enjoyment of the right: —

And, therefore, by the grant to the defendant he had the right to enter upon any land then owned by his grantor, when and where necessary, to enable him to obtain his just supply of water.

If the plaintiff, being the owner of several closes in the same town, brings an action of trespass *quare clausum,* and declares generally, that the defendant broke and entered his close in that town, and thereon committed certain acts, he may prove such acts of trespass to have been committed on any one close of his in that town; but if he introduces and relies upon testimony to prove a trespass upon one close, he must be confined to the close thus selected; and cannot support his action by the introduction afterwards of testimony to prove acts of trespass upon a different close, whether such testimony be objected to or not.

At the trial of this action, which was trespass *quare clausum,* before WHITMAN C. J. the plaintiff contended, that the action was maintainable; that the defendant had no right to hoist the upper dam gate at any time, or to enter the plaintiff's

land for that purpose; that if he had that right at any time, the plaintiff had the right to forbid such entry and hoisting, when there were reasonable grounds to believe, the water would be needed for the grist mill, &c. and that, there being passage ways reserved in the defendant's deed, he had no right to pass over the plaintiff's land below the passage way.

The presiding Judge did not give the instructions requested, but did instruct the jury, that under the deed to the defendant's grantee, he had a right to draw water from the upper dam, when necessary to the convenient use of the shingle machine; provided it did not incommode the operations of the grist mill and carding machine; and that if it were necessary, in such case, to hoist the gate of the upper dam, the defendant would have a right so to do; that in order to do so, if it were necessary to pass over the plaintiff's land, he would have a right to a convenient way over the same for that purpose; that they must judge, whether the defendant exercised these privileges unnecessarily and to the detriment of the plaintiff's rights; and if he did, he must be found guilty; otherwise not.

The verdict was for the defendant; and the case was reported for the decision of the whole Court.

The precise language of the material parts of the deeds and of the declaration, is given in the opinion of the Court, as is also the substance of the testimony in the case.

*J. Appleton* argued for the defendant, contending that the instructions given were erroneous, and that those requested were improperly withheld.

By a fair construction of the deed under which the defendant claims, rights to the lower dam are alone given, that being the privilege. The dam referred to in the deed is the only one in which any rights are acquired; otherwise the word dams should have been used.

The right claimed is that of a perpetual easement on the land of the plaintiff. It is not adjoining the land granted, nor necessary to its use, nor referred to in the defendant's conveyance. The origin of every easement may be referred to an agreement or to a prescription which supposes an agreement.

Neither is the case here. Gale & Whately on Easements, 13; 4 Johns. R. 81; Angell on Limitations, 208.

The defendant had no right to pass over the plaintiff's land, passage ways sufficient being given. He had a way by grant, and he was bound to use that alone. A way of necessity is limited by the necessity which created it; and when such necessity ceases, the right of way also ceases. 9 Moore, 166; 2 Bing. 76; 24 Pick. 102. Even if there was a way of necessity, it should have been located by the owner of the land, which has not been done. 5 Pick. 574.

*Knowles,* for the defendant, said that the owner of the land, under whom both parties claimed, granted to the defendant, the shingle mill " with the privilege of water sufficient to drive a shingle saw at all times, except when the water is so low, that the grist mill and James Hawes' mill require it all." Nothing is said about upper dam or lower, one lot or another lot. The defendant acquired all the right which the grantor then had to water sufficient to " drive a shingle saw," wherever it might be found, with the exception named, which has no concern with the present question. The deed conveys to the defendant the shingle mill, " with all the privileges and appurtenances thereto belonging." This would convey the right of water claimed by the defendant. The right to the water and to the use of it was in the defendant. Angell on Water Courses, 43, and cases there cited; *Blake* v. *Clark,* 4 Greenl. 436.

The defendant having acquired the right to the use of the water, he acquired of course the right, as far as Moore could give it, to enter upon the land and hoist the gate to let the water down. The counsel for the plaintiff is in an error in supposing, that there were ways granted for this purpose. The grant of ways was for an entirely different object. In passing to the upper dam the defendant had the right to pass in any convenient direction. 3 Mason, 280; 1 Taunt. 495; 14 Mass. R. 49; 2 Mass. R. 203; 8 Mass. R. 411.

The declaration claims damages only for entering the plaintiff's close, where the dam was, and removing the gate to the dam and letting off the water. No damages for any other

act is pretended to be claimed. The verdict of the jury has settled the question, that the defendant did the acts in a proper manner, if he had the right to the water, and to open the dam to obtain it. The only questions reserved are, whether the defendant had the right to the water, and the right to enter upon the land for the purpose of using his right by hoisting the gate. Whether it was done in a proper manner is not now before the Court.

*J. Appleton*, in reply, among other remarks, said that the defendant's construction of his grant of water, would destroy all substantial benefit the grist mill had to the first right of water. If the defendant can draw water so long as there is enough for the grist mill, they must both stop nearly together. The reserved water was to be left for the use of the grist mill.

The instruction of the Judge was erroneous in confounding a way of convenience with one of necessity. The grant of a way of necessity does not give the party the right to select the most convenient way, but merely the right to pass in any way the other party may select.

The opinion of the Court was drawn up by

SHEPLEY J. — Benjamin C. Moore, prior to the year 1828, appears to have been the owner of a grain mill upon a dam, which had been erected on lot numbered eleven, in range three, in the town of Corinna, and which had occasioned the flow of a pond of water covering about six acres of land. During that or the following year, he built another dam, about fifty rods further up the stream, on lot numbered eleven, in range four, to preserve the water for the use of his mill, and thereby obtained another pond of water, covering about one hundred acres of land. During the year 1836, he erected a shingle mill on the lower dam. A carding machine appears, at some time not stated, to have been erected on that dam, and to have been conveyed to James Hawes. Moore conveyed to the plaintiff, on July 3, 1839, one undivided half of the grain mill and of a small tract of land, containing about half an acre, " with the privilege of drawing water from the mill pond

sufficient for this or any other grist mill, that may be built on the ground, that this mill stands on, or larger, if the owners of the privilege shall select, but not to infringe on the saw mill privilege. The grist mill has the right of drawing water over every other machinery on the dam, except what is deeded to James Hawes." Moore conveyed to Abner Shepherd, on November 12, 1841, the shingle mill " with the privilege of water sufficient to drive a shingle saw at all times, except when the water is so low, that the grist mill and James Hawes' mill require it all, and then the shingle saw must stop, and not until then." Moore conveyed to the plaintiff, on July 18, 1842, lot numbered eleven, in the fourth range, on which the upper dam had been erected.

It appears from the testimony, that "when the water runs over the upper dam, there is water enough for all the machinery. When it does not, the upper gate must be hoisted to furnish water for the shingle machine." The water had fallen from twelve to eighteen inches below the top of the upper dam, in the month of July, 1842, when the defendant passed over the land of the plaintiff and raised the gate in that dam to obtain sufficient water to work the shingle saw. This he had been forbidden to do by the plaintiff, who has brought this action of trespass *quare clausum*, to recover damages for the alleged injury. " There was no lack of water then to drive the grist mill." The water was then falling, and the plaintiff and Hawes stated, " that they expected a drought, and that the reserve water would be needed." There was, however, no lack of water afterward. In the conveyance from Moore to Shepherd, there was a grant of " a passage way from the west bank at the foot of the saw mill, to the machine. Also a passage from the machine to the east on the mill dam." The defendant appears to have been the assignee or lessee of Abner Shepherd. The jury were instructed, that " he had a right to draw water from the upper dam, when necessary to the convenient use of the shingle machine, provided it did not incommode the operations of the grist mill and carding machine; and that if it were necessary in such case to hoist the gate

of the upper dam, the defendant would have a right so to do ; that in order to do so, if it were necessary to pass over the plaintiff's land, he would have a right to a convenient way over the same for the purpose."

The first question presented for consideration is, whether the defendant, under any circumstances, could rightfully claim to draw water from the upper dam and pond to work the shingle saw. The principal grounds, upon which the denial of such a right rests, are, that the upper dam was erected to reserve the water for the grain mill ; that it was wholly owned by the owners of that mill ; and that Shepherd by his conveyance acquired no interest in it. These positions being admitted do not authorize the conclusion. When Moore, being the owner of the land and stream, erected that dam to preserve the water for his grain mill, the whole water power or head of water, for whatever purpose created, became a common fountain of life to any machinery, to which it might be his pleasure to impart it. He was under no restraint; and might apply that, which was created for one purpose to another and different one. And might grant the right to draw water from such head of water without conveying any title to the dams or land, on which they had been erected. A subsequent conveyance of either dam and land could not ˋdeprive the first grantee of any rights, which he had thus acquired. The rights of these parties must therefore be ascertained from the conveyances made by Moore. He first conveyed one undivided half of the grain mill " with the privilege of drawing water from the mill pond," (regarded as one head of water) " over every other machinery on the dam, except what is deeded to James Hawes." By this grant alone of the right to draw water he would obtain no title to the dams or land. Moore, as the owner of the estate and of the remaining water power, would not be entitled to use it to the injury of the plaintiff's rights. The defendant could acquire from him no better title. With such a right to be secure in a present enjoyment of the use of the water without being damaged by others, the plaintiff does not appear to be satisfied. He claims the right to prevent the subsequent

grantee of Moore from using it, " when there were reasonable grounds to believe the water would be needed for the grist mill." His right to draw and use the water to the exclusion of others is not in his conveyance made to rest upon reasonable grounds of belief of a lack of water at a future time, but upon the fact, that the use of it by others would be injurious to the working of his mill. If Moore had continued to be the owner of the upper dam and pond and of the remaining water power, and had drawn the water from that pond at any time wastefully or for use, the plaintiff could have maintained no action against him therefor, unless he could have proved, that he had been deprived of water sufficient for the working of his mill. It is not difficult to perceive, that the rights of the parties could not be properly regulated or secured, if they were to rest upon apprehensions of approaching danger, and not upon an existing state of facts.

The defendant could not draw water from the upper dam and pond, if the conveyance from Moore to Shepherd granted no such right, whether the plaintiff was or was not injured by it. It is contended, that the language used to make that grant may have its full operation, if the right to draw water, be limited to the lower dam and pond. The grant was made by Moore while he was the owner of all the residue of the water power, and there is no limitation of it. It is a grant in general terms of so much water power owned by the grantor; who in effect engages to furnish so much water power from that stream, unless the water should be required to work the grain mill and carding machine. No dam or pond is named, except for the purpose of designating the bounds of a lot of land or defining a passage way. If Moore had continued to be the owner of the upper dam and pond, and had refused to Shepherd water to work his shingle saw, when there was not sufficient in the lower, but was in the upper pond to work all the machinery, he would have been liable to an action for the injury thereby occasioned; for he had under such circumstances authorized him to use it. The language used in the conveyance of the grain mill to the plaintiff would tend to confirm

this construction, for one mill pond only is mentioned, and the only dam named, is the lower one; and yet there can be no doubt of the intention to authorize the owners of that mill to use the whole water of the stream not required for the mill of Hawes. The defendant must therefore be considered as entitled to the use of the water, when he was forbidden to use it, as he did not thereby injure those, who had superior rights.

Had he a right to raise the gate in the upper dam to obtain it, and to pass over the land of the plaintiff for that purpose ? When Moore granted by express terms sufficient water for the use of the shingle saw, he thereby granted by operation of law the right to use the means necessary to its enjoyment, according to the maxim, *quando aliquis aliquid concedit, concedere videtur et id, sine quo res uti non potest.* And Shepherd might enter upon Moore's land, when and where necessary, to enable him to obtain his just supply of the water. Moore could afterward only convey his land subject to that servitude. But Shepherd could not thereby acquire any right to enter upon the lands of others obtained by a prior purchase from Moore. Nor would the plaintiff, by the purchase of the upper dam and land, while subject to such servitude, impose it upon other lands, which he had before purchased of Moore. Such a right of entry for a special purpose, if it may be denominated a right of way, can be little affected by express grants of ways for different purposes contained in the same conveyance. The testimony in the case shows, that the defendant passed over the lot of land which the plaintiff had purchased in part of Moore, before the defendant had acquired any right whatever to the land or water.

The counsel for the plaintiff contends, therefore, that the action can be maintained for a trespass committed upon that lot. The declaration alleges, that the defendant "broke and entered the plaintiff's close, situated in said Corinna, and then and there took up and removed and opened a certain gate in a dam, made on and upon a stream of water passing through the said close and left the same open." The plaintiff might have proved acts of trespass committed on any close in that

town. But he must select and be confined to testimony applicable to some one close; and none could be received to prove a trespass on two different closes. The plaintiff appears to have selected lot 11, in range 4, as his close; and to have introduced and relied upon his testimony to prove a trespass on that lot, as the principal cause of action. And to that close his declaration appears to have been designed to apply. The half acre does not appear to have been, any part of it, within the bounds of that lot. He could not then be permitted to introduce proof, that the defendant had passed over the half acre lot, and in case he should fail to maintain his action for a trespass on the first close, claim to abandon it, and to resort to the last to sustain it. Should it be said, that such testimony was received without objection, the answer would be, that testimony showing a trespass upon a close other than the one, which must be regarded as the one described in the declaration, could not support the action. *Mudie* v. *Bell,* 3 C. & P. 331. The instructions, which authorized the defendant, if it were necessary, to pass over the plaintiff's land, must be considered as having reference to the close selected as the one, upon which the trespass was alleged to have been committed; and as it respects that close they were correct.

*Judgment on the verdict.*