# KENT COUNTY.

———◆———

CHARLES MATTESON, Trustee, *vs.* THOMAS B. WILBUR *et als.*

The predecessors in title of the complainant and respondents made, by indenture, partition of a certain lot of land and water privilege held in common, under which the complainant took a mill estate, "together with a privilege to build and keep in repair a trench not exceeding seven and a half feet wide, including all necessary materials of stone, plank, or timber from the dividing line to westward into the pond (giving the boundaries), with six tenths of the water appertaining to said divided premises." The part of the complainant was bounded by the stream below the dam. The dam was wholly on the part taken by the respondents: —

*Held,* that six tenths of the water appertaining to said divided premises meant six tenths of the water power.

The trench was built and used to carry water to the complainant's mill for some forty years, during which time the expense of repairs on the dam and of flowage damage was paid proportionally by the complainant and the respondents.

On the respondents attempting to abandon and remove the old dam and build a new one further up the stream, the effect of which would be to deprive the complainant of the use of the water power, a bill in equity was filed to restrain the respondents from so doing : —

*Held,* that the complainant was entitled to the relief sought.

BILL IN EQUITY, with a prayer for an injunction to prevent the respondents from abandoning an old dam and building a new one, the effect of which would be to destroy a water power claimed by the complainant in the bill. The facts and all the portions of the indenture of partition involved which bear upon the question at issue are given in the opinion of the court.

*Providence, June* 4, 1877. STINESS, J. The complainant and respondents are the owners of mills, situated nearly opposite to each other, on the southerly and northerly sides respectively, of the south branch of the Pawtuxet River, in Coventry.

The respondents not only own land across from the complainant's mill but also above it, on both sides of the stream, and the dam and pond are within the limits of their estate.

Those from whom both parties derive their title were formerly tenants in common of " a certain lot of land and water privilege, on the southerly side of the river," embracing the mill estate now owned by the complainant and land above it, upon which the dam abuts and along which the pond extends beyond. In 1830 a partition was made between the parties by deed, and the pres-

ent lines were established. To the parties of the second part in that deed, whose title the complainant now holds, were granted the present mill estate of the complainant, " together with a privilege to build and keep in repair a trench not exceeding seven and a half feet wide, including all necessary materials of stone, plank, or timber, from the dividing line to westward into the pond ; bounding," &c., " with six tenths of the water appertaining to said divided premises." By reason of a previous partition the proportion of water for the southerly side was one third; consequently the six tenths here named would be one fifth of the whole, which the complainant now claims. The trench was built, and from that time forward, until the diversion now complained of, the water from the pond has come through that trench to the complainant's mill.

The dam being upon the defendants' land, they claim that it is their exclusive property ; that the rights of the complainant in a portion of the water and in the trenchway are contingent, and dependent upon the right of the defendants to maintain or abandon the old dam at their pleasure ; and that the right of the complainant is in a certain portion or quantity of the water and not of the water power. Hence they propose to build a new dam, and so to change the location that the result would be, that the complainant could no longer draw water from the pond, thus having its head or power as hitherto, but could only take it from the bed of the stream below the dam.

The question, therefore, is upon the construction of the partition deed, whether under it the complainant acquires so much water, merely as water, or so much water with the head or power in the proportion mentioned in the deed ; in other words, whether the deed grants to the estate of the complainant an easement of water power in the defendants' estate.

There can be no doubt that the owner of a water privilege may grant rights to another, or to several parties, to use the water proportionately, by measurement, through sluice-ways of certain dimensions, for certain specified machinery, to one subject to the prior rights of another, or, generally, under such conditions as he may see fit to prescribe. And it is equally beyond question that he may bind his estate to the maintenance of such an easement as he may have granted to another.

It is also obvious that these propositions apply as well to an indenture as to a deed-poll.

In 1830, then, when the partition was made between the tenants in common, it was competent for the party of the first part, now represented by the respondents, who became the owners of the dam and pond, to grant to the party of the second part, now represented by the complainant, a certain proportion of the water power, and also to bind their estate to the maintenance of the dam and pond for that ·purpose. Did they do this? We think they did, and for several reasons.

The deed describes the estate, of which partition is to be made, as " a certain lot of land and *water privilege ;*" and farther on, though simply the words " of the water" are used, the necessary implication seems to be that water power was understood and intended to be granted; for if this deed was to convey only one fifth of the whole quantity of water, with reference to the stream and not with reference to the pond, why should any mention have been made of the proportion? There is nothing to show, that there was any need for the proprietors of the Kilton Mill to accept, or for the other party to grant, the use of one fifth of the water, simply as such, for, as riparian owners, they would have been entitled to equal rights in the stream below the dam.

That so small a proportion was granted and accepted seems only to be consistent with the understanding that power, head of water, or water from the pond, was the subject of the grant, and that, under the circumstances of the division, such proportion might be both reasonable and equitable.

To this construction great strength is added by the acts .and conduct of the parties after the partition. For more than forty years the water has been conducted from the pond, through the trench, to the complainant's mill, and, so far as appears, without objection or question as to the right. During this period the Washington Company has presented bills to Kilton, which he has paid, for his proportional share in expenses, for repairs on the dam, in suits for flowage, &c.; which tends to show that his right to one fifth of the water of the pond must have been recognized, as the foundation of the right to charge him with a share of the expense. True, it may be said that .so long as the old dam remained, and Kilton had the water from the pond, it was but

right that he should pay his proportion of the expense of maintaining it, and that such payment is no evidence of a permanent right; but in view of the fact that he was also charged with a portion of the expense attending the right of flowage, and in view of the other circumstances of the case, we are led to the conclusion that the parties understood that Kilton's right was as permanent as that of the Washington Company.

Still further is this construction strengthened by consideration of the situation of the parties at the time of the partition. Kilton and his associates needed the head of water and the trench for the operation of their mill, and, if they did not acquire the right to draw water from the pond, their factory as a water-mill would be valueless; and if the grant of the trenchway " into the pond " was contingent and dependent upon the right of the respondents to maintain or abandon the old dam at their pleasure, it is hard to imagine a more barren or precarious grant, or one less likely to have been formally incorporated into a deed of partition.

The respondents' view, therefore, does not appear to us to be the reasonable construction. It would rather seem that a grant of right in the pond, as it then existed, was contemplated by the parties, and that compensation for this right was made in the division of the estate. Thus in *Kilgour* v. *Ashcom*, 5 Har. & J. 82, where, in the division of an estate, a mill was allotted to B., the dam of which covered a portion of the land allotted to C., it was held that B. had a right to use the mill and dam in the same way, and to the same extent, as they had been used by A. in his lifetime, the court remarking, " It was the duty of the commissioners, and it must be supposed they did take into consideration all the advantages and disadvantages attending the respective parts, and that they gave an equivalent for the injury and inconvenience occasioned by the mill dam." The fact that the complainant in this case has no title to any portion of the land covered by the dam and pond does not affect his right therein.

In *Elliott* v. *Shepherd*, 25 Me. 371, an owner of two mills, a shingle-mill and grist-mill, upon the same dam, had another dam above, as a reservoir, for the use of his grist-mill. He sold the shingle-mill to the defendant, with the privilege of using only the surplus water over that required for the grist-mill; and

afterwards sold the grist-mill and upper pond to the plaintiff, who, when there was no surplus of water in the lower pond for the shingle-mill, but more than enough in both ponds for the grist-mill, refused to let down water from the upper pond; claiming it as his private property, in which the defendant, by the conveyance to him, acquired no interest. But the court held that the defendant had a right to the whole water-power, or head of water, as it was when he purchased, and that an owner " might grant the right to draw water from such head of water without conveying any title to the dams or land on which they had been erected."

The complainant's right may also be established by the application of the familiar principle, that whatever is necessary to the beneficial use and enjoyment of a thing granted passes under the grant. Thus the devise of a mill and its appurtenances was held to pass not merely the building but the land used with it, together with the water privilege. *Whitney* v. *Olney*, 3 Mason, 280.

So also in *Gibson* v. *Brockway*, 8 N. H. 465, under the phrase " a certain tenement, being one half of a corn-mill," the land on which the same was situated, together with that portion of the water privilege which was essential to the use of the mill, was held to pass.

In the present case the portion of the privilege essential to the use of the complainant's mill seems to have been agreed upon and specified in the deed. That water from the pond is necessary to the beneficial use of the trenchway is apparent. In addition to these considerations a presumption arises in favor of the complainant's claim from the length of time that the right has been enjoyed.

In *Hazard* v. *Robinson*, 3 Mason, 272, Judge Story remarks: " In respect, however, to incorporeal hereditaments and easements, such as ways and water privileges, the rule of law is well established that an uninterrupted possession and use for twenty years is *prima facie*, and if unexplained, conclusive evidence of a right. In the present case there is nothing to repel the presumption arising from length of time. It was an open, public, uninterrupted use of the water, after the lowering of the dam; it was an important privilege, and if a right could not, under such circumstances, be acquired by thirty-eight years' enjoyment, it is

difficult to conceive to what cases the rule of presumption ought to be applied."

Thus by the terms of the deed, the nature of the grant, and the presumption of use, the claim of the complainant is satisfactorily — perhaps we might say unquestionably — supported. His right to draw water from the pond, as it has existed, in the proportion and manner specified in the deed, is clear, and cannot be taken away or obstructed by the respondents.

The complainant therefore is entitled to the relief prayed for.

*Decree accordingly.*

*Wingate Hayes*, for complainant.
*A. & A. D. Payne*, for respondents.

NOTE. — MATTESON, J., did not sit with the court when the above case was heard.