

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00274-CV

_____

BILLY DON & STEPHANIE COUCH AND CARLO & GIOVANNA RESTREPO,
Appellants and Appellees

V.

JUAN CARLOS AVILA AGUILAR, Appellee and Appellant

On Appeal from the 348th District Court
Tarrant County, Texas
Trial Court No. 348-309669-19

Before Sudderth, C.J.; Birdwell and Bassel, JJ.
Opinion by Justice Birdwell

## OPINION

*"Something there is that doesn't love a wall, that wants it down."*

*Robert Frost, "Mending Wall" (1914).*

Don Carlos Avila Aguilar's neighbors erected a barrier blocking his only means of access to his property: a gravel driveway that passed over his neighbors' lots. So, Avila sued his neighbors, Appellants Billy Don and Stephanie Couch and Carlo and Giovanna Restrepo, and won a necessity easement to cross their land.

On appeal, Appellants challenge the necessity easement. On cross-appeal, Avila contests the trial court's implied determination that he did not have an express easement. We affirm the judgment in all respects.

## I. BACKGROUND

### A. Factual Background

In 1981, Frank Maxey bought a stretch of land in Mansfield, Texas. In 1999, Maxey divvied up his property horizontally into four perpendicular lots. Lot 1 had direct access to Nelson Wyatt Road on the east, and Lot 4 had access to another public roadway on the west, but Lots 2 and 3 in the middle depended on a gravel driveway that ran through Lots 1 and 2 for access to Nelson Wyatt Road. The layout is approximated below:



The central issues in the case are whether the current owner of Lot 3, Avila, has an express or implied easement to cross Appellants' properties, Lots 1 and 2. To evaluate that question, a brief history of how the lots changed hands over the years is necessary.

After Maxey partitioned the property in 1999, he sold Lots 2 and 4 and retained Lots 1 and 3 for himself. Maxey conveyed away Lot 4 to a family who are not involved in this suit except in that their property landlocks Lot 3 from the west. Maxey conveyed Lot 2 to Frankie Nowell and granted him an express easement to cross Lot 1 in order to reach Nelson Wyatt Road.

In 2005, Nowell conveyed Lot 2 to its current owners, Appellants Billy Don and Stephanie Couch. In 2013, Bonnie Williams acquired Lot 3 from a constable tax sale. In 2015, Maxey's estate conveyed Lot 1 to its current owners, Appellants Carlo

and Giovanna Restrepo. At some point after the Restrepos' purchase, Appellants attempted to curtail use of the shared driveway by Lot 3's then-owner Williams, telling her that she was trespassing on their properties when she used the shared driveway.

That trend continued in 2019, when Williams sold Lot 3 to its current owner, Avila. After purchasing Lot 3, Avila was able to access the property only once using the shared driveway. Soon thereafter, Appellants blocked the driveway with a locked gate on the border between Lots 1 and 2, leaving Lot 3 landlocked.

## B. Procedural Background

In 2019, Avila sued Appellants for a declaratory judgment that Lot 3 had an express easement and an implied necessity easement to cross Lots 1 and 2. Appellants countersued for an injunction to prevent Avila from using the driveway.

The case was tried to the bench on stipulated evidence, which largely consisted of deeds and testimony from an earlier hearing. After hearing the evidence, the trial court imposed an implied easement by necessity over Lots 1 and 2 for the benefit of Lot 3. The trial court declined to grant Avila an express easement. Both sides appealed.

## II.    THE COUCHES' AND RESTREPOS' APPEAL

In their appeal, Appellants challenge the trial court's determination that Avila was entitled to an implied easement by necessity over Lots 1 and 2.

Whether a property owner is entitled to an easement by necessity is a question of law, although underlying factual issues may need to be resolved in order to reach

4

the legal question. *Staley Family P'ship, Ltd. v. Stiles*, 483 S.W.3d 545, 548 (Tex. 2016). When neither party requests findings of fact and conclusions of law following a nonjury trial, all fact findings necessary to support the trial court's judgment are implied. *Shields LP v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017). Appellate courts defer to the trial court's findings of fact—so long as they are supported by the record—and review conclusions of law de novo. *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 683 (Tex. 2020).

It is universally recognized that where the owner of a single area of land conveys away part of it, the circumstances attending the conveyance may themselves, without aid of language in the deed, and indeed sometimes in spite of such language, cause an easement to arise as between the two parcels thus created. *Mitchell v. Castellaw*, 246 S.W.2d 163, 167 (Tex. 1952). When an owner conveys part of a tract of land and retains a landlocked portion, a necessity easement over the portion conveyed may be implied so the owner of the landlocked part can access it. *Staley*, 483 S.W.3d at 548. To successfully assert a necessity easement, the party claiming the easement must demonstrate: (1) unity of ownership of the alleged dominant and servient estates prior to severance; (2) the claimed access remains a necessity and not a mere convenience (present necessity); and (3) the necessity also existed at the time the estates were severed (historical necessity). *Hamrick v. Ward*, 446 S.W.3d 377, 382 (Tex. 2014). "The party claiming a necessity easement has the burden to prove all facts necessary to establish it." *Staley*, 483 S.W.3d at 548. For an easement to be necessary,

5

the claimant must show that he lacks any alternative route to legally access the public roadway from his property. *Duff v. Matthews*, 311 S.W.2d 637, 640 (Tex. 1958); *see Staley*, 483 S.W.3d at 549. Necessity does not exist if the easement does not result in access to a public roadway. *Staley*, 483 S.W.3d at 549.

As to the first element, Appellants admit that Lots 1, 2, and 3 derive from common ownership. Also, it is undisputed that Avila's property, Lot 3, is presently landlocked and that he has no other means to access a public roadway from the property besides the shared driveway across Lots 1 and 2, which satisfies the second element, present necessity.

Appellants also concede that, at least at one point, the original owner Maxey was entitled to a necessity easement over Lot 2 because he had no other way to reach a public roadway from his Lot 3. But Appellants insist that there was no historical necessity for an easement over Lot 1. When Maxey partitioned the land and began selling the lots in 1999, he owned Lot 1 (which had direct roadway access) and Lot 3 (which did not). Appellants reason that, at the time of severance, Maxey only had necessity with respect to Lot 2: as the owner of Lot 1, Maxey had no need for an easement over his own property. Indeed, Appellants cite the merger rule to argue that Maxey could not have granted himself an easement across Lot 1 even if he wanted, because that lesser property right would have merged right back into the greater whole of his fee simple. Thus, Appellants contend that in the absence of any historical necessity, the owner of Lot 3 has never had a right to an implied easement

6

over Lot 1; all that Lot 3's owner has ever enjoyed is permissive use of Lot 1. Thus, Appellant's appeal comes down to the third element and whether the original owner, Maxey, had historical necessity to cross Lot 1.

That in turn depends on what, exactly, is necessary. Appellants argue that the necessity for *an easement* must exist at severance. If that is the question, then Avila loses, because it is undisputed that Maxey did not need an easement across his own Lot 1 in 1999. *See Magee v. Hambleton*, No. 2-08-441-CV, 2009 WL 2619425, at *4 n.7 (Tex. App.—Fort Worth Aug. 25, 2009, pet. denied) (mem. op.) (noting that one who owns fee simple does not need an easement across his property).

However, under the Texas Supreme Court's earliest and most common formulation of the doctrine, the question is instead whether the owner of the dominant estate needed "*access*" across the servient estate, *Hamrick*, 446 S.W.3d at 382; *Koonce v. Brite Estate*, 663 S.W.2d 451, 452 (Tex. 1984); *Bains v. Parker*, 182 S.W.2d 397, 399 (Tex. 1944); *Alley v. Carleton*, 29 Tex. 74, 78 (1867); or, alternatively, needed a "*roadway*" across the servient estate. *Waggoner's Estate v. Gleghorn*, 378 S.W.2d 47, 48 (Tex. 1964); *Duff*, 311 S.W.2d at 641; *Othen v. Rosier*, 226 S.W.2d 622, 625 (Tex. 1950). To reach the public roadway from Lot 3, Maxey undoubtedly had the same type of necessity for access and a roadway across Lot 1 that Avila faces today, because to deny him access to a roadway across Lot 1 in 1999 would have entirely landlocked Lot 3 and left the property useless. For Maxey to make meaningful use of Lot 3, he needed the right to cross Lot 1 in order to reach the public roadway at the time of

7

severance.  That historical necessity is not diminished by the fact that he had the legal right to cross Lot 1 as the owner of Lot 1—even if it was a right he had, it was still a right he needed.

This conclusion is consistent with the reasoning that underlies the typical, two-lot case of implied easement by necessity.  In the typical case, the owner of the landlocked lot traverses another lot for many years without problems to reach a public roadway, and the owner of the traversed lot gives the neighboring owner permission to cross his land.  Because the owner of the landlocked lock has permission to cross the traversed lot, he has no need for an easement to cross.  Indeed, the word "easement" is likely never uttered between them—at least, not until the owner of the traversed lot withdraws his permission to cross, and lawyers are involved.  In the resulting appeal, courts will invariably hold that the owner of the landlocked lot had historical necessity to cross, even though he originally had legal permission to cross.  That is, the fact that the owner of the landlocked lot historically had the legal ability to cross the land, through permission, does not destroy his necessity to cross that land all the same.  For as it is widely recognized in other states,

> If, at one time, there has been unity of title, as here, the right to a way by necessity may lay dormant through several transfers of title and yet pass with each transfer as appurtenant to the dominant estate and be exercised at any time by the holder of the title thereto.

*William C. Haak Tr. v. Wilusz*, 949 N.E.2d 833, 837 (Ind. Ct. App. 2011) (quoting *Finn v. Williams*, 33 N.E.2d 226, 228 (Ill. 1941)); *accord Bickel v. Hansen*, 819 P.2d 957, 961

8

(Ariz. Ct. App. 1991); *Kellogg v. Garcia*, 125 Cal. Rptr. 2d 817, 828 (Cal. Ct. App. 2002); *Pencader Assocs., Inc. v. Glasgow Tr.*, 446 A.2d 1097, 1100 (Del. 1982); *Broadhead v. Terpening*, 611 So. 2d 949, 954 (Miss. 1992); *Short v. S. Union Co.*, 372 S.W.3d 520, 539–40 (Mo. Ct. App. 2012); *Frame v. Huber*, 2010 MT 71, ¶ 15, 355 Mont. 515, 519, 231 P.3d 589, 592. "The fact that the original grantee and his successors in interest have been permitted ingress to and egress from the 40 acres over the land owned by surrounding strangers is immaterial." *William C. Haak Tr.*, 949 N.E.2d at 837 (quoting *Finn*, 33 N.E.2d at 228). "When such permission is denied, as in the present case, the subsequent grantees may avail themselves of the dominant and servient estates." *Id.* (quoting *Finn*, 33 N.E.2d at 228).

Similarly, the fact that Maxey had the legal right to cross Lot 1, as his own property, does not destroy his need to do so all the same. Thus, we believe that the element of historical necessity is satisfied, as is shown by *Canali v. Satre*, the facts of which resemble those present in this case. 688 N.E.2d 351, 354 (Ill. App. Ct. 1997). There, a landowner conveyed to strangers most of his land that abutted a public road, and he retained lots D and E for himself. *Id.* For lot E, the only means of ingress and egress was through a small portion of lot D that touched the public road. *See id.* at 354–55. Thereafter, the landowner conveyed away lot D while retaining lot E, thereby landlocking lot E. *Id.* at 354. The court held that historical necessity was shown with respect to lot E despite the fact that the owner once had the right and ability to ingress and egress from Lot E through his own Lot D. *Id.* Like this case,

9

the owner in *Canali* retained two of his partitioned lots, and the fact that his path of historical necessity took him through one of his own lots did not destroy his necessity. *See id.* As support, the court relied on the maxim we have quoted above: "where such a situation exists, the easement need not be for continuous use but may lay dormant through successive grantees to be used at any time by a subsequent titleholder." *Id.*

This dormancy addresses Appellants' argument that there could be no necessity easement in light of the merger rule, under which an easement is terminated when all the benefits and burdens of the various properties come into a single ownership. *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 534 S.W.3d 558, 579 (Tex. App.—San Antonio 2017), *aff'd*, 593 S.W.3d 324 (Tex. 2020). We will assume without deciding that the merger rule applies to easements by necessity in the first place.[1] Even so, we think that dormancy saves the easement from being extinguished by the merger rule. At the time of severance, there was not yet any easement to merge or extinguish because, in its dormant state, the necessity was never formally acknowledged by a court as the basis for an easement that was fixed in character and dimension. And easements are generally fixed things: "Easement boundaries are generally static and attached to a specific portion of private property." *Severance v.*

---

[1]*But see Leggio v. Haggerty*, 42 Cal. Rptr. 400, 406 (Cal. Ct. App. 1965) (holding that necessity easements are not subject to the doctrine of merger); *Fritz v. Tompkins*, 61 N.E. 893, 895–96 (N.Y. 1901) (same); *Hwy. Props. v. Dollar Sav. Bank*, 431 S.E.2d 95, 98 n.4 (W. Va. 1993) (same); *see also Riley v. Jones*, 174 S.W.2d 530, 531 (Ky. 1943); *Stilbell Realty Corp. v. Cullen*, 352 N.Y.S.2d 656, 657–58 (N.Y. App. Div. 1974); *Hazard v. Robinson*, 11 F. Cas. 931, 932 (C.C.D.R.I. 1823).

*Patterson*, 370 S.W.3d 705, 721 (Tex. 2012) (op. on reh'g). "Once established, the location or character of the easement cannot be changed without the consent of the parties." *Id.* With no court ever having recognized an easement or delineated its nature or boundaries, we do not believe that there was some tacit easement floating in the ether—shapeless and undefined, but with enough substance that it must be merged into Maxey's fee simple. Put simply, we do not believe that Maxey's ownership of Lot 1 destroys the dormant necessity for and right to an easement across Lot 1.

Our approach also accords with the root justifications for necessity easements. One basis for the doctrine is the preference against economic waste: "courts will imply a roadway easement to facilitate continued productive use of the landlocked parcel, rather than rigidly restrict access." *Hamrick*, 446 S.W.3d at 382. In this case, no less than in the typical implied-easement case, denying Avila an easement would waste the land's utility, including a pond on Lot 3 that offered a natural supply of water. It would also waste the $100,000 that Avila spent in pursuit of his plan to build a family home on Lot 3. Another basis for the necessity-easement doctrine is implied intent: "the law reads into the instrument that which the circumstances show both grantor and grantee must have intended, had they given the obvious facts of the transaction proper consideration." *Seber v. Union Pac. R.R. Co.*, 350 S.W.3d 640, 648 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (quoting *Mitchell*, 246 S.W.2d at 167). At the time of the severance, Maxey, in his position as owner of Lot 1, could not have

11

intended to deny himself the right to cross Lot 1 to reach the public road. *Accord Canali*, 688 N.E.2d at 354.

With the element of historical necessity satisfied, we hold that Avila is entitled to a necessity easement allowing him to cross Lots 1 and 2, as the trial court determined. We overrule Appellants' first issue. We need not consider Appellants' remaining issue, which rests on the premise that Avila's use of Lot 1 was merely permissive.

## III. AVILA'S CROSS-APPEAL

On cross-appeal, Avila contends that the trial court erred in denying him an express easement across both Lots 1 and 2. Avila's argument hinges on a quirk in the 1999 deed by which Maxey conveyed Lot 2 to Nowell, who owned the property before the Couches. In the deed, Maxey granted Nowell an express easement to cross Lot 1. However, the metes and bounds of the easement stretched not just across Lot 1, but all the way across Lot 2 and up to the border of Lot 3. Thus, it appeared that Maxey was purporting to grant the owner of Lot 2 an express easement to cross Lot 2 as well, which both sides agree was unusual and unnecessary.

Avila reasons that this strange grant works in his favor. He suggests that because the easement's metes and bounds crossed Lot 2, this portion of the deed should operate not only as a grant of an easement across Lot 1 in favor of Lot 2, but also as a reservation of an easement across Lots 1 and 2 in favor of Avila's Lot 3.

12

But nothing in the deed suggests that such a reservation was being made. Just the opposite, under the heading of "Reservations From and Exceptions to Conveyance and Warranty," it stated, "None." The deed thus plainly and unambiguously stated that there were no reservations. "The construction of an unambiguous deed is a question of law for the court." *Griswold v. EOG Res., Inc.*, 459 S.W.3d 713, 717 (Tex. App.—Fort Worth 2015, no pet.). A court's primary goal when construing a deed is to ascertain the true intention of the parties solely from all of the language in the deed. *Id.* The intent that governs "is not the intent that the parties meant but failed to express, but the intent that is expressed." *Id.* If Maxey intended to reserve an express easement across Lots 1 and 2 for the benefit of Lot 3, it was not an intent that he expressed in the deed.

Moreover, Avila's case for an express easement is not aided by the special rules of construction that apply to deeds. "A warranty deed will pass all of the estate owned by the grantor at the time of the conveyance unless there are reservations or exceptions that reduce the estate conveyed." *Id.* "Property 'excepted' or 'reserved' under a deed is never included in the grant and is something to be deducted from the thing granted, narrowing and limiting what would otherwise pass by the general words of the grant." *Id.* "Reservations must be made by clear language, and courts do not favor reservations by implication." *Id.* Deeds "are to be most strongly construed against the grantor and in favor of the grantee; this rule applies to reservations and

13

exceptions." *Id.* The absence of any language clearly reserving an express easement in favor of Lot 3 speaks strongly against the existence of such an easement.

It is true that "we presume that the parties to a deed intend every clause to have some effect and in some measure to evidence their agreement." *Chi. Title Ins. Co. v. Cochran Invs., Inc.*, 602 S.W.3d 895, 900 (Tex. 2020) (internal quotation omitted). From that principle come cases like *Jones v. Moctezuma*, which, among the cases that Avila cites, is the most on point and the most favorable to his cause. No. 14-94-00009-CV, 1995 WL 681294, at *2 (Tex. App.—Houston [14th Dist.] Nov. 16, 1995, writ denied) (op. on reh'g) (not designated for publication). Avila relies on *Jones* to urge that the deed's metes and bounds description must be given some effect, which he says should be the reservation of an easement in favor of Lot 3.

In *Jones*, two parents conveyed a property to their son in a deed with limiting language indicating that the property conveyed was "subject to" a road easement when, in fact, the easement's metes and bounds description and the attached surveys instead depicted what could only be consistent with the grant of an easement wholly on an adjacent property that was retained by the parents. *Id.* The deed's granting clause was silent as to any easement on the retained property, and the parties "conceded[]" that a deed's limiting language was "mislabeled" with words delimiting an easement. *Id.* On those facts, the court opted to construe the deed as granting an easement on the adjacent property, since doing otherwise would rob any effect from the deed's language concerning an easement, its metes and bounds description of that

14

easement, and its attached maps and surveys.[2] *See id.* But unlike *Jones*, here, the metes and bounds did not describe an easement that was wholly inconsistent with the nature of the easement as it was described in the deed. Rather, the metes and bounds were largely consistent with, and correct according to, the stated nature of the easement, which was a grant in favor of Lot 2 rather than a reservation in favor of Lot 3. Thus, unlike *Jones*, the grant clauses in question did have some effect as they were written, and a sensible effect at that: they granted the owner of Lot 2 an ingress-egress easement across Lot 1, which Lot 2's owner needed in order to make use of his property. The fact that the deed achieved that necessary end with some surplusage does not give us leave to rewrite the correct portion of the deed's plain language: "When part of a deed's property description is incorrect, we will disregard that part as surplusage and enforce the deed if the remainder of the description identifies the land with sufficient certainty." *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 745 n.12 (Tex. 2020) (internal quotation omitted). Moreover, also unlike *Jones*, where the grant clause was merely silent as to whether there was any such easement, here, the reservation clause spoke to that matter, stating explicitly that there were no reservations whatsoever. *See Meekins v. Wisnoski*, 404 S.W.3d 690, 699–700 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (relying in part on the statement of "None" under the heading of "Reservations from Conveyance" to hold that there was no reservation).

---

[2]The dissent would have held differently. *See id.* at *3 (Fowler, J., dissenting).

15

We therefore hold that the unambiguous language of the deed in question did not reserve an express easement in favor of Lot 3.  We overrule Avila's lone issue on cross-appeal.

## IV.    CONCLUSION

We affirm the trial court's judgment in all respects.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered:  August 12, 2021