Miller v. Pendergras 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-019-CV





A. L. MILLER AND WIFE, DORIS MILLER AND CITY OF AUSTIN,



 APPELLANTS


vs.





DOUGLAS G. PENDERGRAS AND WIFE, LINDA PENDERGRAS,



 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT



NO. 470,745, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING



 




 This appeal involves a dispute between owners of two adjoining tracts of land on
Lake Austin. The trial court rendered judgment following a bench trial in favor of defendants and
counterclaimants below, Douglas and Linda Pendergras (hereafter "Pendergras"). (1) The record
contains no findings of fact or conclusions of law. A. L. and Doris Miller (hereafter "Miller")
appeal. We will affirm the trial court's judgment.



BACKGROUND


 The predecessor in interest of both parties, Mrs. H. K. Nagle, owned three
adjoining lots, each running east to west between Westlake Drive and Lake Austin. The eastern
boundary of these lots did not reach the water's edge so there was an area of unplatted land, also
owned by Mrs. Nagle, between each lot and the lake (See Plat #1).

 On August 20, 1969, Mrs. Nagle created four lots out of the three existing lots by
filing a resubdivision plat with Travis County. Of the four lots, three fronted on Westlake Drive
but the fourth, tract B, had no street access. As a part of the resubdivision plat, Mrs. Nagle
created an easement across the northernmost tract, lot 68-A, for ingress and egress to tract B. 
The land between the eastern boundary of the platted lots and the lake remained unplatted (See
Plat #2). The exhibits below illustrate the configuration of the lots before and after the
resubdivision.













 Plat #1 Plat #2


 Mrs. Nagle then conveyed a lot to each of her four children, including her sons
Robert and Albert. She transferred lot 68-A and the unplatted land lying east of that lot to Robert
Nagle. She conveyed tract B and the unplatted land lying east of tract B to Albert Nagle. 
Thereafter, Albert also acquired lot 66-A. Albert Nagle sold lot 66-A, tract B, and the unplatted
land east of tract B to Miller in 1978. Miller constructed a home on tract B, and continued to use
the driveway easement across lot 68-A for access. Sometime later, Miller and his son, who have
a construction business, built a home on lot 66-A and sold that house and lot without reserving
an easement for access to and from the remainder of Miller's property.

 Robert Nagle sold lot 68-A and the unplatted land east of that lot to Pendergras in
1984. Pendergras built a home on lot 68-A, and Miller and Pendergras engaged in a series of
meetings and discussions regarding improvements to the driveway easement and the installation
of sewer and water lines.

 In 1988 Pendergras listed his home for sale. At about that same time Miller
became interested in obtaining approval from the City of Austin to construct one or two homes
on the unplatted land between tract B and Lake Austin. When Pendergras was unwilling to grant
Miller the easements required for City approval, Miller brought this cause seeking three
declarations under the Uniform Declaratory Judgment Act, Tex. Civ. Prac. & Rem. Code Ann.
§§ 37.001-.011 (1986 & Supp. 1992): (1) that the easement to tract B was also, by implication
or necessity, an easement to the unplatted land east of tract B; (2) that the unplatted Miller
property included the most southerly fifty feet of the land east of Pendergras's lot 68-A; and (3)
that an oral promise by Pendergras that he would grant to Miller a utility easement for water and
sewer lines across Pendergras's lot 68-A was enforceable.

 Pendergras counterclaimed to obtain a declaratory judgment and to enforce Miller's
promise to pay a portion of the cost of the driveway improvements. Pendergras sought three
declarations: (1) that the express driveway easement serves only tract B; (2) that the unplatted
land east of tract B is not a "legal lot" as contemplated by applicable state statutes and city
ordinances governing subdivisions; and (3) that the utility easement Miller sought encompasses
only the utility lines installed and is limited to service for a single-family residence. (2) Pendergras
also sought attorney's fees. See Tex. Civ. Prac. & Rem. Code Ann. §§ 37.009, 38.001-.006
(1986).

 The trial court rendered judgment declaring (1) that the boundary line between the
parties' property is as set forth in Pendergras's deed; (2) that no easement for access to and from
Miller's unplatted property east of tract B exists across the property Pendergras owns; (3) that
Miller be granted an easement for water and sewer lines as installed to serve a single-family
residence on tract B; (4) that the unplatted eastern portion of Miller's property does not constitute
a "legal lot" and is not otherwise exempt from the requirements of applicable subdivision statutes
and ordinances; and (5) that judgment be granted in favor of Pendergras for $1,490.89 for
driveway improvements and $30,000 for attorney's fees, $15,000 of which Miller is ordered to
pay.

 Miller raises six points of error on appeal complaining generally of the sufficiency
of the evidence to support the trial court's declarations. He also complains (1) that Pendergras
lacks standing to raise the legal-lot issue; (2) that the trial court abused its discretion in admitting
defense exhibits which were not identified in response to a proper discovery request; (3) that the
four-year statute of limitation bars Pendergras's claim for recovery of expenses for driveway
improvements; and (4) that attorney's fees awarded to Pendergras were excessive. 

 When reviewing a legal sufficiency point, we consider only the evidence and
inferences tending to support the finding of the trier of fact, and disregard all evidence and
inferences to the contrary. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). When the
complaint challenges the failure to find a fact, we may look at all the evidence to determine if the
contrary proposition is established as a matter of law. Holley v. Watts, 629 S.W.2d 694, 696
(Tex. 1982). When reviewing a factual sufficiency point, we consider all of the evidence to
determine whether the finding or failure to find is so against the great weight and preponderance
of the evidence as to be clearly wrong or manifestly unjust. Cropper v. Caterpillar Tractor Co.,
754 S.W.2d 646 (Tex. 1988); In re King's Estate, 244 S.W.2d 660, 664-65 (Tex. 1951). See
Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex. L. Rev.
361 (1960).

EASEMENT BY IMPLICATION OR NECESSITY


 The trial court declared that "the express easement across Lot 68-A of the
Resubdivision is for the benefit of and serves only Tract B of the Resubdivision and no other
property, and that no other easements of any kind exist across Lot 68-A . . . ." Thus, Miller
failed to carry his burden to prove he has an easement across lot 68-A to his unplatted land. 
Miller complains in point of error one that the court erred in failing to find that there is an
easement by implication or necessity from Westlake Drive across lot 68-A for the benefit of the
unplatted area east of tract B.

 It is undisputed that there is an express driveway easement from Westlake Drive
across lot 68-A for the benefit of tract B. This easement is granted in the 1969 deed from Mrs.
Nagle to her son Albert -- "The grantee herein shall have the right for an access roadway across
Lot 68-A for the purpose of access to Tract B . . . ." Further, the easement is shown on the 1969
resubdivision plat and is labelled "Ingress & Egress For Tract B." Miller argues that at the time
Mrs. Nagle conveyed the lots to her children, an easement by implication arose providing Albert
access from the road over lot 68-A to his unplatted property east of tract B.

 It is clear from the deed and plat that the easement is expressly limited for the use
of tract B. In her 1969 deed to Albert, Mrs. Nagle conveyed tract B and the unplatted area east
of tract B as separately-described parcels of land, yet the reservation states only that it is "for the
purpose of access to Tract B." Accordingly, Miller may not burden this easement with use for
the benefit of the unplatted area east of tract B. See Bickler v. Bickler, 403 S.W.2d 354 (Tex.
1966). "Where an easement is created by express grant, its use must be determined by the terms
of the grant considered in light of surrounding circumstances. If the terms are specific, they are
decisive of the limits of the use, so that the use may not be enlarged beyond that warranted by the
grant." Kearney & Son v. Fancher, 401 S.W.2d 897, 903 (Tex. Civ. App. 1966, writ ref'd
n.r.e.); Klothe v. Harris County Flood Control Dist., 306 S.W.2d 390 (Tex. Civ. App. 1957, no
writ) ("Where an easement exists by express grant, . . . its use must be confined to the terms and
purposes of the grant.").

 This express easement precludes a finding that Miller has an easement by
implication to the unplatted area east of tract B. There can be no easement by implication
incidental to the grant of an express easement except that which is reasonably necessary to the fair
enjoyment of the express easement. Capitol Rod & Gun Club v. Lower Colo. River Auth., 622
S.W.2d 887, 893 (Tex. App. 1981, writ ref'd n.r.e.); see also Coleman v. Forister, 514 S.W.2d
899, 903 (Tex. 1974); Wall v. Lower Colo. River Auth., 536 S.W.2d 688, 691 (Tex. Civ. App.
1976, writ ref'd n.r.e.).

 Neither may Miller establish an easement by necessity. Even assuming an easement
may have arisen, it ceased when Albert Nagle obtained lot 66-A, providing him frontage on
Westlake Drive. An easement by necessity is temporary and ceases to exist when the necessity
terminates. Bains v. Parker, 182 S.W.2d 397, 399 (Tex. 1944). In 1978, Miller acquired lot 66-A, tract B, and the unplatted area east of tract B, giving all of his property access to Westlake
Drive. Miller sold lot 66-A without retaining an easement for the benefit of his remaining
property, although he admits that he could have built a driveway for access to Westlake Drive
across lot 66-A. Therefore, any easement by necessity that may have existed before the common
ownership of these parcels of land terminated. See Duff v. Matthews, 311 S.W.2d 637, 640 (Tex.
1958); Sentell v. Williamson County, 801 S.W.2d 220, 223 (Tex. App. 1990, no writ).

 We overrule Miller's first point of error.



THE UTILITY EASEMENT


 By letter dated June 18, 1984, Pendergras agreed as follows:



I, Douglas G. Pendergras of 3007 Westlake Drive, Austin, Texas agree to grant
a water line and sewer line easement to A.L. Miller upon the completion of the
engineering which shall detail the location of said easements.



Miller's second point of error complains that the trial court erred in limiting the scope of the
utility easement to a single-family residence on tract B.

 Miller initially suggests that it was not until one day before trial that Pendergras
first alleged by pleading that the utility easement was restricted, and that he did so without leave
of court. See Tex. R. Civ. P. Ann. 63 (Supp. 1992). He does not complain of any trial court
error; he merely states the fact. Miller did not object to the pleading, move to strike, claim
surprise, or seek a continuance. Thus, he did not preserve any complaint below and any defect
in pleading is waived. See Tex. R. Civ. P. Ann. 90 (Supp. 1992); Tex. R. App. P. Ann. 52(a)
(Pamph. 1992).

 Miller also argues that nothing in the record limits the utility easement to a single-
family residence on tract B. Mr. Pendergras testified that the agreement to give Miller an
easement for utility lines was only to service Miller's home on tract B. Mr. Miller testified that
he understood that he had only one living unit equivalent for sewer and water and that the
agreement with Pendergras was for those utilities to go to his home. He also testified that the
purpose of the agreement was to enable him to have city water to his home and at some future
time to convert from his septic tank to a community sewer tap.

 Miller's understanding of this agreement is evidenced by a letter from Miller to
Pendergras dated September 19, 1984, which states in pertinent part:



"The sewer service to my house should be extended to my property. It now stops
on your property. Question, will Hickman Plumbing do this or should I go ahead
and have this done?


I would like to go ahead and have an engineer prepare and record field notes,
granting an easement to me, on the water and sewer lines that serve my residence,
in accordance with our letter agreement."



(Emphasis added).

 Assuming Miller properly complains of a finding, we hold that there is sufficient
probative evidence to support the trial court's finding in support of the judgment. Miller's second
point of error is overruled.



THE LEGAL-LOT ISSUE


 As sought by Pendergras, the trial court rendered judgment "that the property lying
between Tract B of the Resubdivision and the water's edge of Lake Austin (or the Colorado River)
is not a `legal lot.'" Thus, the property is not exempt from the requirements of the state
subdivision statute or city subdivision ordinances requiring that "no city utilities may be extended
to such property and no building permit may be issued for construction thereon until the owner
thereof complies with all such requirements . . . ."

 By his third and fourth points of error Miller attacks this declaration. He
complains that Pendergras lacks standing to raise this issue because he has neither pleaded nor
proved any personal injury to himself.

 Miller waived any error by failing to file a verified plea challenging Pendergras's
capacity to sue. Tex. R. Civ. P. Ann. 93(c) (1979); Pledger v. Schoellkopf, 762 S.W.2d 145
(Tex. 1989). Further, any error is waived because Miller failed to specifically object at trial. See
Tex. R. Civ. P. Ann. 90; Tex. R. App. P. Ann. 52.

 By point of error number three, Miller complains of the sufficiency of the evidence
to prove the subject property was not a legal lot. The thrust of his argument, however, is that the
trial court abused its discretion in admitting five of Pendergras's exhibits into evidence, over
Miller's objection, because these exhibits were not identified in response to interrogatories in
violation of Texas Rule of Civil Procedure 215(5) (Supp. 1992). Miller does not direct his point
of error to any trial-court ruling; thus, any error is waived. Nevertheless, we will attempt to
address the point as an abuse-of-discretion complaint.

 Before trial, Miller served interrogatories on Pendergras inquiring:



Interrogatory No. 7: Please identify each document which Defendants assert
supports the assertion by the Defendants that the two tracts east of Tract B were
not created as separate lots prior to the applicable grandfather date of June 9, 1951.


Interrogatory No. 9: Please state every fact or facts of which you are aware and
the origin or source of such fact or facts which support the assertion by the
Defendants that the two tracts east of Tract B were not created as separate lots
prior to the applicable grandfather date of June 9, 1951.



 Pendergras responded to interrogatory number seven with a list of twelve
documents, copies of which he attached to his answers. The challenged exhibits were not among
those twelve documents.

 Pendergras's response to interrogatory number nine reads:



"Such facts as set forth in Defendants' First Amended Original Counterclaim and
Third Party Complaint and also according to the deeds and Mr. and Mrs. Robert
Nagle, the property between Tract B and the waters edge was never conveyed or
used separately from Tract B and it was never intended that such property would
constitute a lot separate from Tract B."



 Pendergras supplemented his answers to these interrogatories on July 13, 1990, less
than thirty days before the trial began on July 16, 1990. 

 Rule 166b(6)(a) places upon a party the duty to supplement responses to requests
for discovery not less than thirty days before trial "if he obtains information upon the basis of
which: (1) he knows that the response was incorrect or incomplete when made; (2) he knows that
the response though correct and complete when made is no longer true and complete and the
circumstances are such that failure to amend the answer is in substance misleading . . . ." Tex.
R. Civ. P. Ann. 166b(6)(a) (Supp. 1992). Failure to do so results in loss of the opportunity to
offer the evidence, but the trial court has discretion to admit the evidence for good cause. Tex.
R. Civ. P. Ann. 215(5); Gill Savings Ass'n v. Chair King, Inc., 783 S.W.2d 674 (Tex. App.
1989), aff'd in part, modified in part on other grounds, 797 S.W.2d 31 (Tex. 1990). 
Documentary and testimonial proof, as opposed to argument of counsel, must be supplied to
sustain a burden of showing good cause for failure to timely supplement a discovery request. 
Lopez v. Foremost Paving, Inc., 796 S.W.2d 473 (Tex. App. 1990, no writ). The trial court's
determination of good cause will be set aside on appeal only for an abuse of discretion. Gill
Savings Ass'n, 783 S.W.2d at 681. A trial court abuses its discretion if it acts without reference
to any guiding rules and principles to determine if the trial court has abused its discretion. 
Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241 (Tex. 1985), cert. denied, 476
U.S. 1159 (1986).

 Pendergras clearly failed to supplement his answers at least thirty days before trial. 
The issue here is whether Pendergras had a duty to supplement and if so whether good cause for
not doing so is shown in the record.

 The certification dates of the complained of exhibits demonstrate that they were all
obtained between July 12 and July 18, 1990. Pendergras supplemented his answer on July 13,
1990, to alert Miller to the possibility that documents not yet identified might be offered as
evidence at trial:



For the first time, on Tuesday, July 10, 1990, . . . representatives of the City of
Austin indicated to counsel for Defendants that the applicable grandfather date
probably is not, as the parties apparently had assumed, June 9, 1951. According
to City representatives, as a result of a statute enacted in 1928, the City limits of
the City of Austin were extended to a certain contour line. Thus, the grandfather
date would be 1946 when the subdivision ordinance was enacted. This required
verification by counsel, which has been in progress since that time and is not
completed as of this date. It appears that such statute was enacted, and that,
according to maps in the sole possession of City representatives, the subject
property was in the City limits as early as 1928. Defendants are attempting to
obtain copies of such maps, or to obtain similar maps from other sources, and will
bring same to trial. Defendants have also sought copies of deeds, all of which are
matters of public record, to determine the ownership and configuration of the
property not as of 1951, but as of 1946, and intend to bring any such deeds to trial.
On the basis of the information currently available, it appears that the property
Miller seeks to have declared "legal" did not consist of an independent lot or lots
as of the applicable grandfather date. Defendants may also bring copies of the
statutes and ordinances referred to above.



Pendergras adopted this answer by reference in his supplemental answer to interrogatory number
seven.

 A party is under no duty to supplement answers to interrogatories until the
information which renders that party's answer "no longer true and complete" becomes known to
him. Rule 166b(6)(a)(2); Exocet Inc. v. Cordes, 815 S.W.2d 350 (Tex. App. 1991, no writ); see
also Ramos v. Champlin Petroleum Co., 750 S.W.2d 873, 877 (Tex. App. 1988, writ denied). 
Pendergras had no duty to supplement his answers until the existence and need for additional
documents became apparent. Since the trial court could have found that Pendergras supplemented
his answers as soon as the duty arose, Miller cannot show the trial court abused its discretion in
admitting these exhibits into evidence. The third and fourth points of error are overruled.



DRIVEWAY IMPROVEMENTS


 Miller's fifth point of error complains that the trial court erred in rendering
judgment that Pendergras recover $1490.80 for driveway improvements because the four-year
statute of limitations barred the claim, and because there was either no evidence or insufficient
evidence to support this amount.

 Pendergras received a statement for the driveway improvements on January 28,
1985. His counterclaim against Miller for Miller's share of the cost of these driveway
improvements was not filed until October 30, 1989. Therefore, Miller argues, the four-year
statute of limitations bars Pendergras's counterclaim. Tex. Civ. Prac. & Rem. Code Ann.
§16.004 (1986).

 Pendergras contends the counterclaim was timely, relying on section 16.069 of the
Civil Practice and Remedies Code:



(a) If a counterclaim or cross claim arises out of the same transaction or
occurrence that is the basis of an action, a party to the action may file the
counterclaim or cross claim even though as a separate action it would be
barred by limitations on the date the party's answer is required.


(b) The counterclaim or cross claim must be filed not later than the 30th day after
the date on which the party's answer is required.



Tex. Civ. Prac. & Rem. Code Ann. § 16.069 (1986).

 Pendergras's counterclaim was filed within the time period prescribed in section
16.069(b). Citation was served on September 6, 1989, which would require Pendergras to answer
by October 2, 1989. Thus, Pendergras had until November 1, 1989, to file his counterclaim
under section 16.069(b). His counterclaim filed on October 30, 1989, was therefore timely.

 Miller contends that section 16.069 is inapplicable because the counterclaim did not
arise out of the same transaction or occurrence as his own claim for a utility easement. However,
the letter from Miller to Pendergras dated September 19, 1984, evidences the fact that the
construction of the driveway and the installation of water and sewer lines were all a part of the
same transaction between the adjoining landowners:



It appears that you have a more expensive driveway planned to serve our houses,
than the driveway that I had in mind. The main difference, is the removal of the
existing asphalt pavement and preparing a new base. I would like to propose the
following:


1. You go ahead, when applicable, and construct a driveway in accordance with
your wishes.


2. I will participate in the cost of the driveway, from my drive to entrance, to
the extent of 80¢ per square foot. This cost is equal to one-half the cost
quoted by Juan Cement Contractor.


3. Hopefully, you will consider widening the drive to a minimum of 16 feet and
widening the entrance as needed to give an easier turn. The hump should also
be smoothed out to some extent.


The sewer service to my house should be extended to my property. It now stops
on your property. Question, will Hickman Plumbing do this or should I go ahead
and have this done?


I would like to go ahead and have an engineer prepare and record field notes,
granting an easement to me, on the water and sewer lines that serve my residence,
in accordance with our letter agreement.


Should you agree with the above or if you have other suggestions, please let me
know.



 Miller further argues that there is insufficient evidence to support the court's award
of $1490.80 as his share of the driveway repairs. However, Miller agreed to pay for one-half of
the cost of driveway reconstruction as quoted by Juan Cement, or eighty cents per square foot. 
Pendergras testified that the original driveway encompassed 1863.5 square feet. This evidence
is sufficient to support the court's award for driveway improvements of $1490.80, which
represents the square footage of the original driveway multiplied by eighty cents per square foot. 
Miller's fifth point of error is therefore overruled.



 ATTORNEY'S FEES


 Pendergras sought attorneys' fees on two theories of recovery. Section 38.001 of
the Civil Practice and Remedies Code permits a party to recover reasonable attorney's fees in a
suit on an oral contract. One prerequisite to recovery under this section is presentment of the
claim to the opposing party. Tex. Civ. Prac. & Rem. Code Ann. § 38.002 (1986). In addition,
section 37.009 of the Uniform Declaratory Judgment Act permits an award of reasonable and
necessary attorney's fees in a declaratory-judgment proceeding. Tex. Civ. Prac. & Rem. Code
Ann. § 37.009 (1986). This section has no prerequisite presentment requirement. 

 Miller's sixth point of error complains that the evidence is insufficient to support
the trial court's award of $30,000 attorneys' fees to Pendergras and that the attorneys' fees are
excessive. Miller was ordered to pay Pendergras one-half of this amount. Miller appears to argue
first that Pendergras presented no evidence of presentment, citing Mendleski v. Silvertooth, 798
S.W.2d 30 (Tex. App. 1990, no writ). However, since the record contains no findings of fact,
we must uphold the judgment if the evidence is sufficient to support it on any theory of law. Allen
v. Allen, 717 S.W.2d 311, 313 (Tex. 1986).

 The evidence is sufficient to support the award of $30,000 attorneys' fees for the
declaratory-judgment claims alone. Pendergras's attorney, Robert Roller, testified that the legal
fees incurred up until the time of trial were $38,520. He allocated these fees as follows: $385.20
to the utility-easement issue, $770.40 to the driveway-improvements issue, $21,186 to the legal-lot
issue, and $16,178.40 to the driveway-easement issue. He testified further that these fees should
be discounted by ten percent to allow for considerable overlap in trial preparation. With this
discount, Roller testified that the fees were reasonable, customary and necessary considering the
complexity of the case, its nature, and the time spent by the paralegals and four attorneys. Roller also testified that the hourly rates of $125 to $180 for an attorney's time and
$30 to $50 for a paralegal's time are reasonable and customary rates in the area. Finally, Roller
testified that expenses incurred were $500.13, that a reasonable rate for conducting the case on
appeal would be $15,000, and that a reasonable rate for appeal to the supreme court would be
$5,000 or $8,000, depending on whether writ was granted or not.

 Miller argues that Roller's testimony is incompetent because he was unable to
testify on the basis of his own personal knowledge as to how much time was expended by each
of the four attorneys, citing Wiznia v. Wilcock, 438 S.W.2d 874 (Tex. Civ. App. 1969, writ ref'd
n.r.e.). In other words, Miller complains that the testimony is inadmissible hearsay. However,
the argument is waived because Miller failed to object to the testimony at trial. "Inadmissible
hearsay admitted without objection shall not be denied probative value merely because it is
hearsay." Tex. R. Civ. Evid. Ann. 802 (Pamph. 1992).

 To contradict Roller's testimony, Miller's attorney testified that $38,500 in
attorneys' fees is excessive and that a reasonable fee would be $7,500. The city's expert witness
testified that a reasonable and customary fee would be $100 to $125 per hour.

 The trial court has broad discretion in awarding attorney's fees in a declaratory-
judgment action. See, e.g., Elder v. Bro, 809 S.W.2d 799, 801 (Tex. App. 1991, writ denied). 
The award of attorney's fees in such an action will not be reversed absent a clear showing that the
trial court abused its discretion. Id.; see also Oake v. Collin County, 692 S.W.2d 454, 455 (Tex.
1985). Expert testimony of a party's attorney as to the reasonableness of the fee for handling such
a case has been held sufficient to support an award of attorney's fees. See Gonzales v. Neilson,
770 S.W.2d 99, 102-03 (Tex. App. 1989, writ denied). Although conflicting evidence was
presented as to the reasonableness of the amount of attorneys' fees claimed, we conclude that
sufficient evidence supports the award of $30,000 in attorneys' fees. Therefore, the award of that
amount does not constitute an abuse of discretion. Miller's sixth point of error is overruled.

 The judgment of the trial court is affirmed.

 


 

 Marilyn Aboussie, Justice

[Before Chief Justice Carroll, Justices Aboussie and Kidd]

Affirmed

Filed: June 17, 1992

[Do Not Publish]
1.   To simplify discussion, both parties are referred to singularly throughout. The record
reflects that most dealings were between Mr. Miller and Mr. Pendergras.
2.   As to the second declaration sought, Pendergras joined the City of Austin as a third-party defendant so that the court's judgment would be binding on the appropriate governmental
authorities. The City perfected an appeal but filed no brief.