Marvin F. SENTELL, et al., Appellants,

v.

WILLIAMSON COUNTY, Texas, et al., Appellees.

No. 3–89–209–CV.

Court of Appeals of Texas, Austin.

Dec. 5, 1990.

Marvin F. Sentell, Snyder, for appellants.

Billy Ray Stubblefield, Williamson County Atty., Dale A. Rye, First Asst. County Atty., Georgetown, for appellees.

Before SHANNON, C.J., and ABOUSSIE and JONES, JJ.

## ON MOTION FOR REHEARING

SHANNON, Chief Justice.

The opinion handed down by this Court on October 31, 1990, is withdrawn, and the following is substituted in its place.

This appeal is from a take-nothing judgment rendered by the district court of Williamson County.

Appellants [1] (the Sentells) sought a declaratory judgment that an easement across their land had terminated. The Sentells had expressly granted the easement to appellee Williamson County pursuant to a land swap. The Sentells claimed that the easement terminated due to the occurrence of one of the conditions placed on the easement. After a bench trial, the district court rendered judgment declaring that the Sentells failed to meet their burden of proof concerning the occurrence of the condition and that, accordingly, the easement across the Sentells' property had not terminated. We will reverse and here render judgment that the easement terminated.

The controlling facts are not in dispute.[2] Williamson County (the County), as trustee for its schools, has long owned sections of ranch land in Sutton County. Before 1973, the sections here involved comprised approximately 3,200 contiguous acres connected diagonally and cutting through ranches owned by several families, including the Sentells. Historically, the land owned by the County had been "landlocked" because no public roadways bordered or ran through the property and no easements had been granted in the deeds from the State to the County. The nearest public access to this land, before the events forming the basis of this lawsuit, was old Highway 290, now Interstate 10. (This is illustrated by Map No. 1.)

The relationship between the County and adjacent landowners was amicable enough before 1967. The County merely leased its lands to the surrounding landowners who used it for their farming and ranching operations. In 1967, however, the County began negotiating, as a condition to renew-

1. Appellants are Marvin F. Sentell, Joe W. Sentell, Lois Sentell, and Mary Sue S. Harbaugh.

2. On motion for rehearing, the County claims that there were disputed fact issues raised by testimony of various witnesses concerning the intention of the parties to the terms of the easement. However, when a writing is unambiguous, the primary concern of the court is to give effect to, and ascertain, the true intentions of the parties as expressed in the instrument. *Westwind Exploration, Inc. v. Homestate Sav. Assn.*, 696 S.W.2d 378 (Tex.1985); *Gracia v. RC Cola-7-Up Bottling Co.*, 667 S.W.2d 517 (Tex. 1984). It is the objective, not subjective, intent that controls. *City of Pinehurst v. Spooner Addition*, 432 S.W.2d 515 (Tex.1968); *A.R. Clark Inv. Co. v. Green*, 375 S.W.2d 425 (Tex.1964).

ing the leases, for permanent access to its land. Nevertheless, no agreements were formed and the leasing arrangements continued as before, until August 1973.

In August 1973, the County notified all of the surrounding landowners that their leases would not be renewed until the County acquired permanent access to its lands. At that time, the Sentells undertook negotiations with the County and an agreement was eventually reached in November 1973 (the Agreement).

The Agreement involved swapping a part of the County's land for an equal portion of the Sentells' land. The result of this land trade was that the County lands no longer ran diagonally through the Sentells' property. The swap did not, however, solve the problem of access for the County. Therefore, incident to the Agreement, the Sentells also granted the County an easement across their land (the "Sentell easement"). (See Map No. 2 illustrating the property after the Agreement.)

The Agreement expressly conditioned the granting of the easement. The fifth, and last, of these conditions provides as follows:

> It is understood that if Grantee should ever obtain a better and more direct route so as to have a means of ingress to and egress from its said property, this easement shall become null and void and of no further force and effect and Grantee shall execute a release or reconvey such easement.[3]

Although the Agreement was signed on November 12, 1973, the warranty deeds and the nonexclusive roadway easement were not executed until October 1974. In this period, between the signing of the Agreement and the execution of the documents, the County obtained an easement across the adjacent Foster ranch (the Foster Road easement which connects with Hwy. 20 (now Interstate 10)). (See Map No. 3 for an illustration of the location of the Foster Road easement.)

The County and the Fosters disagreed as to whether the Foster Road easement was a permanent or temporary easement. This disagreement resulted in the filing of two separate lawsuits in 1983, one each in Sutton and Williamson Counties. The parties settled both suits and signed a compromise agreement on July 1, 1985 (the Compromise Agreement). The Compromise Agreement provided for a land exchange between the Fosters and the County and for each party to own one-half of the Foster Road easement and have a permanent easement to use the other one-half. (Map No. 4 illustrates the property ownership after the Compromise Agreement.) As a result of the Compromise Agreement, the County obtained land on both sides of Interstate 10.

The Sentells filed the declaratory judgment suit to terminate the easement across their property after they learned of the County's land swap with the Fosters. The basis for the Sentells' contention was that, by obtaining direct access to its land by Interstate 10 and fee simple ownership of the Foster Road easement, the County had obtained a "better and more direct route" to their property, thus triggering the express condition to the easement granted across the Sentell property. In response, the County asserted that the easement across the Sentells' property was a "better" route because of the superior physical condition of the road and a "more direct" route because it accessed County land in closer proximity to that part of the land obtained in the trade with the Sentells.[4] Accordingly, the County contends, the condition was never satisfied.

---

3. An easement that terminates upon the happening of a particular event or contingency, as here, is denominated a "determinable easement." *Scott v. Walden,* 140 Tex. 31, 165 S.W.2d 449 (1942); 154 A.L.R. 1, 33 (1945).

4. There is a disagreement between the parties as to what property is described by the phrase "said property" in the condition to the Sentell easement. The County asserts that the reference is exclusively to the property it obtained in the land swap with the Sentells. The Sentells, on the other hand, assert that reference is to the entire tract of land owned by the County. For reasons stated later in the opinion, it is not necessary to the disposition of this appeal to ascertain the meaning of that language.

The district court agreed with the County and apparently based its holding on the purported superior physical condition of the Sentell easement and/or its proximity to the property obtained by the County in the Sentell agreement.[5] We do not agree.

Because the controlling facts are not in dispute, the question of whether the Sentell easement had terminated is one of law. *Adams v. Rowles*, 228 S.W.2d 849, 852 (Tex.1950). Because the relevant terms of the condition placed on the easement are not ambiguous, the construction of this instrument is likewise a question of law. *Wall v. Colorado River Authority*, 536 S.W.2d 688, 691 (Tex.App.1976, writ ref'd n.r.e.).

The Sentells and the County expressly agreed that if the County obtained a "better and more direct route so as to have a means of ingress to and egress from its said property," then the Sentell easement would terminate. By use of the terms "ingress to" and "egress from," the parties plainly expressed their understanding that if the County should ever obtain another means of access to their property, then the Sentell easement would terminate. *Rushin v. Humphrey*, 778 S.W.2d 95 (Tex.App. 1989, writ denied). That the intention of the parties was for the County to have a means of access to its property is evident, not only from the clear meaning of the terms "ingress' and "egress," but also from the proof. There was a disagreement between the parties, however, as to what was meant by the term "said property" as used in the condition to the easement. The County relies on its interpretation of this phrase to support its argument that the easement had not terminated. The Sentells assert that the construction of this phrase is irrelevant to the disposition of this case. We agree with the Sentells.

Even were we to accept the County's construction of the term "said property" as referring only to the property obtained in the Agreement with the Sentells, nevertheless, as a matter of law, the Sentell ease-ment could not be a "better and more direct route" to this parcel of land. In the Compromise Agreement with the Fosters, the County obtained a parcel of land through which a major public thoroughfare (Interstate 10) passes, along with fee simple title to one half of the Foster Road easement and a permanent easement to use the other half. By virtue of these two routes, the County has direct access to *all* of its lands, access which does not necessitate travelling over adjacent property. The position of the County is somewhat analogous to that of a landowner who claims an easement by necessity that burdens another's land while possessing access to the same tract of land over his own property. The law does not tolerate such claims. *See Duff v. Matthews*, 158 Tex. 333, 311 S.W.2d 637, 640 (1958); *Payne v. Edmonson*, 712 S.W.2d 793, 796 (Tex.App.1986, writ ref'd n.r.e.).

When one has access to a part of his tract of land by way of travel over his own property, this, as a matter of law, is a better and more direct route than one which burdens an adjacent landowner. This conclusion is consistent with the general premise that easements, and the conditions placed upon them, should be construed in a manner that places as little burden as possible upon the servient estate. *Coleman v. Forister*, 514 S.W.2d 899, 903 (Tex.1974). It does not matter that the route across one's own land is longer, more circuitous, or in an inferior condition physically. "That the way over his own land is too steep or too narrow, or that other and like difficulties exist, does not alter the case; and it is only where there is no way through his own land that a grantee can claim a right over that of grantor." *Duff v. Matthews, supra,* quoting *Kripp v. Curtis,* 71 Cal. 62, 11 P. 879, 880 (1866).

Because the County obtained a "better and more direct route" to its lands by virtue of the Compromise Agreement with the

---

5. Appellant's timely request for findings of fact and conclusions of law was ignored by the trial judge. However, from the evidence presented by the County, it can be fairly assumed that this was the basis for the Court's decision. *Bishop v. Bishop,* 359 S.W.2d 869 (Tex.1962).

Fosters, we conclude that the easement across the Sentells' property terminated as a matter of law.

The judgment of the district court is reversed and judgment is here rendered that the County's easement across the Sentells' lands terminated.