Sandra CRONE, Appellant,

v.

Acton BRUMLEY and Mary
Brumley, Appellees.

No. 04–05–00227–CV.

Court of Appeals of Texas,
San Antonio.

Nov. 22, 2006.

Rehearing Overruled Dec. 18, 2006.

Gilbert Vara, Jr., The Law Office of Gilbert Vara, Jr., San Antonio, for appellant.

Haygood Gulley, Doran, Gulley & Etzel, Del Rio, Mark J. Cannan, Clemens & Spencer, P.C., San Antonio, for appellees.

Sitting: SARAH B. DUNCAN, KAREN ANGELINI and PHYLIS J. SPEEDLIN, Justices.

## OPINION

Opinion by SARAH B. DUNCAN, Justice.

The dispositive issue in this appeal is whether the evidence is legally sufficient to support the jury's findings that an easement south from the Brumleys' Ranch across Sandra Crone's Sycamore Ranch to Highway 2523 was "necessary" when the properties were severed in 1923 and at the time of trial. Because there is no evidence that a public road abutted the Sycamore Ranch on the south in 1923 and there is conclusive evidence of legal access to the Brumley Ranch from Highway 277/377 to the north, we hold the evidence is legally insufficient to support the jury's findings and therefore reverse the trial court's

judgment and render a take-nothing judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

This appeal involves what was once one large tract of ranch land owned by Abb Rose. On July 5, 1920, Abb severed his tract of land, keeping for himself the northern portion and conveying the southern portion to his son, Pat. In 1923, Pat conveyed the northern portion of his tract to E.S. DeLoach. It is undisputed that since the 1923 severance DeLoach's property has been "landlocked," surrounded on all sides by land owned by either Abb, Pat, or third-parties and without immediate access to a public road. However, the northwest corner of Abb's property bordered what is now Highway 277/377, a public road that runs from Sonora and Rocksprings in the north to Del Rio in the south. In 1924, Abb conveyed this corner of his land to H.I. North; and in 1931, Abb conveyed the land between the land he had conveyed to North and Pat's land to his son, Therrell. As of the date of the trial in this case, Pat's property was owned by his granddaughter Sandra Rose Crone; De-Loach's property was owned by Acton Brumley with a life estate in his mother Mary; the North property was owned by T.S. Hickman, Trustee; and Therrell Rose's property was divided between James and Anita Rollo and the Therrell Rose Pinon Ranch subdivision, all as shown on the map below:

No recorded document expressly grants an easement to what we will refer to as the DeLoach/Brumley Ranch north through what was once Abb's land to Highway 277/377 or south through what we will refer to as Crone's Sycamore Ranch to what was once Hamilton and Standart Lanes and are now Farm–to–Market Road 2523.

After they acquired the DeLoach/Brumley Ranch and until 2002, the Brumleys, as well as the hunters to whom they leased, accessed their ranch from the south on a private road over Crone's Sycamore Ranch by permission. However, after Crone noticed that water lines had been broken, household goods had been taken, a gate had been left open and livestock were missing, several head of livestock were found dead, and grasses had been torn up by the hunters' four-wheelers, Crone locked the gate on the road leading from her ranch to the DeLoach/Brumley Ranch, ultimately permitting only the Brumleys access to their property for maintenance purposes. In response, the Brumleys filed

this lawsuit seeking to establish an easement by necessity south through Crone's Sycamore Ranch to Farm–to–Market Road 2523. The jury found "that when Pat Rose conveyed the property that is now the Brumley Ranch to E.S. DeLoach in 1923, the necessary and only reasonable access to the DeLoach property was south across what is now the Crone property to a public road" and "that since 1923 to the present, the necessary and only reasonable access to what is now the Brumley Ranch is south across what is now the Crone Ranch to what is now [Farm–to–Market Road] 2523." In accordance with these findings, the trial court signed a judgment awarding the Brumleys an easement by necessity south across Crone's property to Farm–to–Market Road 2523. Crone appeals, arguing the evidence is legally and factually insufficient to establish that an easement across her property was necessary either in 1923 or today.

### Applicable Law and Standard of Review

■ When a grantee seeks an easement by necessity over land once owned by a common grantor but conveyed to third parties, he seeks a way of necessity by implied grant. *See, e.g., Bickler v. Bickler*, 403 S.W.2d 354, 357 (Tex.1966). "The elements needed to establish an implied easement by necessity are: (1) unity of ownership prior to separation; (2) access must be a necessity and not a mere convenience; and (3) the necessity must exist at the time of severance of the two estates." *Koonce v. Brite Estate*, 663 S.W.2d 451, 452 (Tex.1984) (citing *Duff v. Matthews*, 158 Tex. 333, 311 S.W.2d 637 (1958)). "The way of necessity must be more than one of convenience for if the owner of the land can use another way, he cannot claim by implication to pass over

that of another to get to his own." *Duff*, 311 S.W.2d at 640. However, an easement by necessity is not defeated by proof that the party seeking the easement has "a mere license to use a way across the land" of another. *Bains v. Parker*, 143 Tex. 57, 182 S.W.2d 397, 399 (1944). Rather, the party seeking to establish an easement by necessity must prove that he has no other legal access to his property. *See Bickler*, 403 S.W.2d at 357–59; *Duff*, 311 S.W.2d at 642–43; *Bains*, 182 S.W.2d at 399. Once an easement by necessity arises, it continues until "the necessity terminates." *Bains*, 182 S.W.2d at 399. The burden to prove all the facts necessary to establish an easement by necessity rests on the party seeking the easement. *Duff*, 311 S.W.2d at 640; *Bains*, 182 S.W.2d at 399.

■ Crone argues that the "[s]ufficiency of the evidence is guided by the 'strict necessity' test." *See Mitchell v. Castellaw*, 151 Tex. 56, 246 S.W.2d 163, 168 (1952) (holding "[t]he question of strict necessity [or not] is one of mixed law and fact and accordingly one for the fact finder in the ordinary case."). The Brumleys, on the other hand, although initially setting out the requirements for an easement by necessity, proceed to conflate "necessity" and "reasonable" to argue that "the correct standard for the jury for an easement by necessity is 'reasonable necessity.' " However, absent a charge objection, we measure the sufficiency of the evidence against the jury charge actually given. *See Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 221 (Tex.2005).[1] The jury in this case was asked not whether an easement was "strictly necessary," as Crone argues, or whether it was a "reasonable necessity," as the Brumleys argue. Rather, the jury was asked whether an easement was "the necessary and only reasonable" means to ac-

---

**1.** Although the record reflects Crone requested jury questions and instructions regarding the doctrine of strict necessity, it does not reflect the trial court ruled on her requests.

cess the DeLoach Ranch; and it was instructed that "[a] way of necessity ... must be more than one of convenience." None of these terms were defined in the court's charge. But, in this context, "necessary" means "compulsory," "absolutely needed," or "required." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 790 (Merriam–Webster, Inc.1984). "Reasonable" means "not extreme or excessive," "moderate," "fair," or "inexpensive." *Id.* at 981. In common usage, "and" is "used as a function word to indicate connection or addition esp[ecially] of items within the same class or type" and "to join sentence elements of the same grammatical rank or function." *Id.* at 84.

■ "There is legally sufficient evidence of a matter when the proof and inferences from the proof furnish a reasonable basis for reasonable minds to reach differing conclusions as to the existence of the matter." *Dew v. Crown Derrick Erectors, Inc.,* 49 Tex. Sup.Ct. J. 851, 2006 WL 1792216, at *10 (Tex. Jun. 30, 2006). Accordingly, the jury's findings that an easement south across Crone's Sycamore Ranch was and is "the necessary and only reasonable" access to the DeLoach/Brumley Ranch is supported by legally sufficient evidence only if "the proof and inferences from the proof furnish a reasonable basis to reach differing conclusions" both as to whether an easement is required and fair. We start, as we must, with whether an easement is "necessary" or "required." *Cf. Duff,* 311 S.W.2d at 640–43 (because Texas is committed to the doctrine of "strict" necessity, court uses strict necessity standard to measure the sufficiency of evidence even though jury was asked only whether easement was "necessary").

### NECESSITY

■ As evidenced by the questions submitted to the jury, the Brumleys argued at trial that their right to an easement by necessity south across Crone's Sycamore Ranch arose out of Pat Rose's sale of the northern half of his land to DeLoach in 1923. Crone, on the other hand, argued that an easement by necessity north across what was Abb's land arose in 1920 when Abb sold the southern half of his land to Pat and continued through Pat's sale to DeLoach and DeLoach's sale to the Brumleys. We agree with Crone that the analysis must start with the severance of Abb's land in 1920.

■ As set forth above, a party seeking an easement by necessity must prove that he has no other legal access to his property. *See Duff,* 311 S.W.2d at 640. Legal access includes an easement by necessity. *See Bains,* 182 S.W.2d at 399. And once an easement by necessity arises, it continues until "the necessity terminates." *Id.* Accordingly, we must first determine whether Pat acquired an easement by necessity over Abb's lands to the north in 1920 and whether that way was still necessary when Pat transferred the northern half of his land to DeLoach in 1923.

Unity of title before Abb's transfer to Pat is undisputed. What is disputed is whether Pat had access from his land to a public road other than north through Abb's land to Highway 277/377. The Brumleys argue that he did—south to what was formerly Hamilton and Standart Lanes and is now Farm–to–Market Road 2523. In support of their argument, the Brumleys refer only to a 1936 Texas Highway Department map, a 1944 Corp. of Engineers map, and the testimony of Ray C. Hutto, who described Highway 2523 as a gravel, county-maintained road that "everybody used" traveling from Carta Valley to Del Rio in the 1920s when he was in school. However, maps dated 1936 and 1944 cannot establish the existence of a public road south of Pat's land in 1920 or 1923; nor do they furnish a basis for inferring that a public road existed some six-

teen and twenty-four years before their publication. Nor does Hutto's testimony since he testified he was not born until 1920 and did not visit the ranches in this area until 1940. Indeed, the only competent evidence we have been able to find in the record on this issue is the testimony of Crone's expert William Blackburn, an attorney who specializes in real estate and who testified unequivocally that his review of the public records in the relevant counties revealed no evidence of a public roadway that abutted Pat's property to the south either in 1920 or in 1923.

From this evidence, we conclude, like Blackburn, that the 1920 severance created in Pat a way of necessity north over Abb's land to Highway 277/377; and this way of necessity was impliedly transferred to DeLoach in 1923 and later to the Brumleys upon their acquisition of the De-Loach/Brumley Ranch. *See, e.g., Rushin v. Humphrey*, 778 S.W.2d 95, 97 (Tex. App.-Houston [1st Dist.] 1989, writ denied) ("As successors in interest to the admitted common source of title, the appellees are entitled to assert whatever easement rights were acquired at the time of the 1958 conveyance from Amy McKnight to Oscar Rushin."). Blackburn testified this is so even if there were no existing roads. But it is undisputed that there is a road out of the DeLoach/Brumley Ranch to the north across what was once Abb's property (and is now the Hickman and Rollo Ranches and Pinon Ranch subdivision) to Highway 277/377. Indeed, Crone's mother Frances, who lived with her husband Martin on their Sycamore Ranch in the early 1940s, testified that, unless DeLoach was paying a call on them and therefore using the road south across Sycamore Ranch by permission, he used the northern road out of the DeLoach/Brumley Ranch to Highway 277/377.

 Acton Brumley also testified that, since Crone locked her gate, the hunters to whom he leases his lands have used this northern route out of the De-Loach/Brumley Ranch without interference. In Brumley's view, however, this northern route is not reasonable access because it is impassable without a four-wheel drive vehicle. However, " '[t]hose circumstances show that he has a way, which needs repair, and that until repaired it is impassable. But the impassability of the road gives to a party no right to an easement.' " *Duff,* 311 S.W.2d at 642–43 (quoting *Carey v. Rae,* 58 Cal. 159, 163 (1881)). Brumley's testimony thus establishes not that the road from the De-Loach/Brumley Ranch south across Crone's Sycamore Ranch to Highway 2523 is necessary but that it is more convenient than the northern road leading to Highway 277/377. *See Duff,* 311 S.W.2d at 642 ("It may be true that Matthews and other lot owners, as a matter of convenience, were not then using the upper road to reach their property and that the upper road had grown up in trees and underbrush and possibly washed out to the extent that it was no longer passable. These facts do not give Matthews a way of necessity. . . .").

CONCLUSION

Because there is no competent evidence that a public road abutted Pat Rose's land on the south in 1923 and there is conclusive evidence of a road out of the De-Loach/Brumley Ranch to the north in 1923 and today, we hold the evidence is legally insufficient to support the jury's findings that an easement south across Crone's Sycamore Ranch to Highway 2523 was "necessary" in 1923 and at the time of trial. We therefore reverse the trial court's judgment and render a take-nothing judgment.