The **STALEY FAMILY PARTNERSHIP, LTD.,** Petitioner,

v.

**David Lee STILES, Delzie Stiles, Ginger Westbrook, Robert Stiles, and David Stiles, Respondents**

NO. 14–0591

Supreme Court of Texas.

Argued October 14, 2015

January 29, 2016

Darrell W. Smith, Culter-Smith, P.C., Dallas, Robert Allen Miller, Prager & Miller, P.C., Dallas, Chad M. Ruback, The Ruback Law Firm, Dallas, for Petitioner.

Charles (Chad) E. Baruch, Johnston Tobey Baruch, P.C., Dallas, Grady R.

Thompson, McWilliams & Thompson, McKinney, for Respondents.

JUSTICE JOHNSON delivered the opinion of the Court.

This matter involves a landlocked tract of land and property adjacent to it that were part of an 1853 land grant from the State of Texas. The land grant was partitioned into separate tracts in 1866 at which time the tracts were severed. The eventual owner of the landlocked tract sought to establish a roadway easement across the adjacent property, but the trial court denied relief. The court of appeals affirmed. It held there was no evidence that, at the time the two tracts were severed, the easement would have resulted in access to a public road from the landlocked property. We affirm.

### I. Background

Two Collin County properties are involved in this appeal—a 10.129–acre tract we will refer to as the Staley Tract, and a larger tract we will refer to as the Stiles Tract. Both properties were once part of a single tract the State granted to Thompson Helms in 1853 (Thompson Helms Tract). In 1866, after Helms and his wife died, a probate court partitioned the tract among their six children. Three children received tracts relevant to this suit. The three properties were generally rectangular in shape; their long axes ran in an east-west direction, and they were "stacked" from north to south. Axia Ann Helms received the northernmost tract; James Helms, the tract immediately to the south of hers; and Frances Helms, the tract immediately to the south of James's. Except for the Staley Tract in the northwest corner of his portion, Frances conveyed his land to James in the 1870s, with the last conveyance being in 1876.

The Staley Tract has at all relevant times been bounded on the east and south by an unnamed tributary of Honey Creek that separates the Staley Tract from the property Frances conveyed to James in 1876, on the north by property originally partitioned to James, and on the west and south by Honey Creek. Honey Creek and its tributary ran generally north to south through the parts of the Thompson Helms Tract apportioned to Axia Ann and James, and partly through the part apportioned to Frances. They join on the southern edge of the Staley Tract, forming an elongated "V." Being thus surrounded, the Staley Tract is landlocked in regard to automobile traffic because Honey Creek and its tributary are not passable from where they join on the south side of the Staley Tract to at least the northern boundary of the property originally partitioned to Axia Ann. The three original tracts were generally as shown below, with the Staley Tract labeled as "Landlocked Portion."

In 2009, the Staley Family Partnership (Staley) acquired the 10.129–acre tract Frances had not conveyed to James. At that time, the land north of the Staley Tract and between Honey Creek and its tributary (previously owned by Axia Ann and James) was, and had been for many years, owned by members of the Stiles family. County Road 134 (CR 134) runs east and west along the northern boundary of the Stiles Tract, and it crosses Honey Creek and the tributary via bridges. The record does not reflect who owns the land north of CR 134 between Honey Creek and its tributary.

After acquiring the Staley Tract, Staley sued the owners of the Stiles Tract, David Lee Stiles, Delzie Stiles, Ginger Westbrook, Robert Stiles, and David Stiles, (collectively, Stiles) for a declaratory judgment that an easement runs north from the Staley Tract across the Stiles Tract and connects to CR 134, either by necessity, estoppel, or implication. Stiles counterclaimed for a declaration that no such easement exists. Both parties sought attorney's fees.

Trial was to the court. Maps introduced into evidence showed roads in the vicinity of CR 134 may have existed as early as the 1930s, but there was no evidence of a public roadway through the Stiles Tract or along its northern boundary before that

time. The trial court filed findings of fact and conclusions of law, including findings that (1) both Honey Creek and its tributary are impassable by vehicle from the southern tip of the Staley Tract where they join, to the northern boundary of the Stiles tract where CR 134 is located, and (2) Honey Creek and the tributary are now in the same condition as they were in 1866 and 1876. The trial court rendered judgment that Staley was not entitled to an easement across the Stiles Tract and awarded Stiles attorney's fees.

Staley appealed, abandoning its claims of easement by estoppel and implication, and arguing only that it proved it was entitled to a roadway easement by necessity. *See Hamrick v. Ward*, 446 S.W.3d 377, 379 (Tex.2014) (clarifying that a necessity easement "is the legal doctrine applicable to landowners asserting implied easements for roadway access to their landlocked, previously unified parcel"). The court of appeals disagreed and affirmed the trial court's judgment. 435 S.W.3d 851 (Tex. App.—Dallas 2014). The appeals court noted that an essential element of an easement by necessity is that, at the time the alleged dominant property was severed from the alleged servient property, the easement was necessary for the landlocked dominant property to have roadway access to a public road. *See id.* at 855–56. The

court held that the Staley Tract was severed from the property to its north, for purposes of a necessity easement, in 1866 when the Thompson Helms Tract was apportioned to his children. *Id.* at 856. It also held there was no evidence that at the time of that severance, an easement running north and south across the Stiles Tract would have resulted in—that is, was necessary for—access between the Staley Tract and a public road. *Id.* at 858.

In this Court, Staley argues that the court of appeals erred by holding Staley was required to prove that the easement it sought would have resulted in the Staley Tract having access to a public road when the tract was severed from the Stiles Tract. Stiles maintains, however, that the court of appeals was correct on the law. Further, Stiles asserts that the court of appeals correctly concluded the record contains no evidence of a public roadway along the northern boundary of the Stiles Tract in 1866. That being so, Stiles posits, Staley failed to establish historical necessity for a roadway easement across the Stiles Tract, and the court of appeals correctly affirmed the trial court's judgment. Stiles alternatively argues that Staley failed to present evidence proving unity of ownership because the relevant "severance" was when Frances transferred the property east of the Staley Tract to James in 1876, at which time no unity of ownership existed between the Stiles Tract and the Stiles Tract.

## II. Standard of Review

◼ Whether a property owner is entitled to an easement by necessity is a question of law, although underlying factual issues may need to be resolved in order to reach the legal question. *See* 435 S.W.3d at 855 (citing *Benedictine Sisters of the Good Shepherd v. Ellison,* 956 S.W.2d 629, 631 (Tex.App.—San Antonio 1997, pet. de-

nied)). Here, the trial court made findings of fact that are not challenged, and concluded as a matter of law that Staley did not have an easement by necessity across the Stiles Tract. *Id.* We review a trial court's conclusions of law de novo. *City of Austin v. Whittington,* 384 S.W.3d 766, 788 (Tex.2012).

## III. Easement By Necessity

◼ When an owner conveys part of a tract of land and retains a landlocked portion, a right of way by necessity over the portion conveyed is implied so the owner of the landlocked part can access it. *See Koonce v. J.E. Brite Estate,* 663 S.W.2d 451, 452 (Tex.1984) (citing *Bains v. Parker,* 143 Tex. 57, 182 S.W.2d 397 (1944)). The party claiming a necessity easement must show: (1) unity of ownership of the alleged dominant and servient estates before severance; (2) the claimed easement is a present necessity and not a mere convenience; and (3) the necessity for the easement existed when the two estates were severed. *Hamrick,* 446 S.W.3d at 382; *Othen v. Rosier,* 148 Tex. 485, 226 S.W.2d 622, 625 (1950). The party claiming a necessity easement has the burden to prove all facts necessary to establish it. *See Bains,* 182 S.W.2d at 399.

## IV. Discussion

◼ The court of appeals determined that the relevant severance occurred in 1866, not 1876 as the trial court concluded. 435 S.W.3d at 856. We agree with the appeals court. The alleged servient estate is the Stiles Tract just to the north of the Staley Tract. That property was part of the Thompson Helms Tract before it was severed from the Staley Tract and partitioned to James and Axia Ann by the probate court in 1866. In 1876, the Staley Tract was severed from the tract to the east when Frances conveyed the eastern

tract to James. But the tract to the east is not the alleged servient estate here, so that severance date is not at issue.

Staley argues that it proved, and Stiles does not dispute, that the Staley and Stiles Tracts were part of the Thompson Helms Tract until they were partitioned in 1866; Honey Creek and its tributary forming the western, southern, and eastern borders of the Staley Tract are impassable by vehicles and have been in the same condition at all times relevant to this matter; and the only possible overland access to the Staley Tract has been and is to the north through the Stiles tract. Staley says that is all it was required to prove. It is not.

■ We do not disagree with much of what Staley asserts. But as the court of appeals held, establishing the "necessity" part of an easement by necessity requires, in part, proof that at the time the dominant and servient estates were severed, the necessity arose for an easement across the servient estate in order that the dominant estate could in some manner gain access to a public road. 435 S.W.3d at 857. Staley does not argue that it proved the existence of a public roadway where CR 134 is now located on the northern boundary of the Stiles tract as of the time the tracts were severed, or that an easement to that point would have somehow otherwise resulted in access between the Staley tract and a public roadway.

Although the underlying facts before us are different from those in *Bains,* our explanation of the underlying principle in that case is illuminating. 182 S.W.2d at 397. Guy E. Bains, the owner of a landlocked tract, asserted an easement by necessity over an adjoining 400–acre tract. *Id.* at 398. The 400–acre tract did not abut a public roadway, but it did abut another tract owned by a third party that Bains had permission to cross in order to access a public roadway. *Id.* The court of

appeals held that Bains did not have an easement by necessity because the easement being sought was contingent on permissive use of the third party-owned adjoining land and that permission could be denied at any time, rendering the claimed easement useless. *Id.* We disagreed, holding that "[t]*he way is necessary* so long as Bains is allowed *access to the highway*" over the third tract. *Id.* at 399 (emphasis added). We also noted, however, that if the third-party owner of the adjoining tract ever withdrew the permission granted to Bains, Bains's right to the easement by necessity over the 400 acres would cease, unless "in connection with a road over any other land, he can *reach the public highway.*" *Id.* (emphasis added).

As Staley points out, we recognized that the right to an easement was not defeated by the fact that the claimed right of way did not open to a public roadway. *See id.* at 400. However, our decision that Bains was entitled to an easement rested on Bains's ultimately being able to access a public highway by means of the easement being sought and the absence of any alternative way for him to do so. *Id.*

We stated again in *Hamrick* that necessity depends on the easement's being necessary to provide access to a public roadway and that a necessity no longer exists if, as could have happened in *Bains,* the easement does not result in such access. 446 S.W.3d at 382. This is consistent with implying a right of way in order to facilitate continued productive use of a landlocked parcel. *Id.* (citing *Alley v. Carleton,* 29 Tex. 74, 78 (1867)). But a right of way that does not result in access to a public roadway is not, under long-standing precedent, necessary because it does not facilitate use of the landlocked property. *See Ingham v. O'Block,* 351 S.W.3d 96, 102 (Tex.App.—San Antonio 2011, pet. denied) (rejecting landowner's claim that there is

no "public road requirement" for an easement by necessity because such a conclusion would be inconsistent with the purpose of a necessity easement to provide roadway access to the landlocked tract).

Staley asserts that two cases relied on by the court of appeals in support of its conclusion are distinguishable. In one of the cases Staley cites, *Crone v. Brumley*, 219 S.W.3d 65 (Tex.App.—San Antonio 2006, pet. denied), the court held that a landowner failed to prove that an easement across property to the south was necessary both at the time of severance and at the time of trial. *Id.* at 70. As for a necessity at the time of severance, the court stated there was no competent evidence of a public road to the south at that time, even though conclusive evidence showed a road to the north. *Id.* We agree that the presence of an alternate road distinguishes *Crone* from this case. But the court's conclusion that no evidence supported a necessity easement to the south was based on the lack of evidence that, at the time of severance, the easement sought would have resulted in access to a public road. *See id.*

And in the second case Staley references, *Tiller v. Lake Alexander Properties, Ltd.*, 96 S.W.3d 617 (Tex.App.—Texarkana 2002, no pet.), the appeals court concluded there was neither evidence that on the date of severance the tract at issue was landlocked property nor that it lacked access to a public road. *Id.* at 623. Staley argues that had the party seeking the easement presented evidence that at the time of severance the tract was landlocked and could only have been accessed by crossing the adjacent tract, the court would have imposed an easement. But the court did not address what it would have held had the landowner presented such evidence. Nor did it say that an easement could have been established across the neighboring tract without evidence that the easement would have allowed access between the landlocked tract and a public roadway.

In *Othen*, we held that a landowner failed to prove that an easement was a necessity on the date of severance. 226 S.W.2d at 626. Although there was testimony that the easement "was the only outlet to a *public road* since about 1900 ... there was none as to the situation on August 26, 1896" when the tracts were severed. *Id.* (emphasis added). Similarly here, while there was evidence that an easement would have yielded access to a public road in the 1930s, there was no evidence of a public road to which it would have yielded access at the time of severance in 1866. *See* 28A C. J.S. *Easements* § 111 ("A way of necessity cannot exist across land which had no access to a public road when the property was divided by the common grantor.").

## V. Conclusion

Staley failed to establish entitlement to a necessity easement across the Stiles Tract. We affirm the judgment of the court of appeals.