

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00035-CV

Robert **MEDINA** and Christina **MEDINA**,
Appellants

v.

Timothy K. **BOWERS**,
Appellee

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-CI-11752
Honorable Michael E. Mery, Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:          Marialyn Barnard, Justice
                  Patricia O. Alvarez, Justice
                  Irene Rios, Justice

Delivered and Filed: December 27, 2018

REVERSED, RENDERED, AND REMANDED

This appeal arises from a real property dispute between appellants, Robert Medina and Christina Medina, and appellee, Timothy K. Bowers, who are adjoining landowners. The trial court rendered a judgment declaring the Medinas have no existing easement or prescriptive rights over Timothy's property and therefore, are enjoined from using or crossing over it. On appeal, the Medinas challenge the trial court's judgment, raising eight issues for our review. Because we hold the Medinas have an easement by necessity over Timothy's property to access Gardner Road, we reverse the trial court's judgment and render judgment declaring the Medinas have a valid

easement by necessity over Timothy's property. We also remand the cause to the trial court for reconsideration of the attorney's fees.

## BACKGROUND

This appeal involves seven family members – Timothy; Timothy's parents, Tracy and Rachel Bowers; and Timothy's aunts and uncles, Stacy and Miriam Bowers and the Medinas – who entered into a contract to purchase 60 acres of land from Dr. Sarah Nunneley in 2002. Tracy, who is Timothy's father, negotiated the transaction on behalf of the family. Initially, the family members planned to purchase the property as tenants-in-common and then divide the land into four tracts with each couple and Timothy receiving a tract. At closing, Dr. Nunneley added an additional 2.027 acres of land to the transaction; these additional acres consisted of a triangular area that abutted Gardner Road. This triangular area was low-lying and known to frequently flood. When the additional acreage was added to the transaction, it was unclear how it would be allotted among the family members. Ultimately, the triangular portion was allotted to Timothy, and the family members divided the land as follows: a 25-acre tract to Tracy and Rachel Bowers; a 17-acre tract to Timothy; a 5.027-acre tract to the Medinas; and a 15-acre tract to Stacy and Miriam Bowers. The 17-acre tract allotted to Timothy was comprised of two areas, including the triangular area, connected by a 20-foot strip of land. Each family members' property also included a 20-foot strip of land that ran along the southern portion of their tracts and gave them direct access to Gardner Road. The families' tracts are depicted as follows:



As depicted above, Tracy and Rachel Bowers and Timothy's strips of land ran parallel to each other directly to Gardner Road. This point of entry became known as the southern entrance. With regard to the strips of land allotted to the Medinas and Stacy and Miriam Bowers, their strips ran parallel to the other strips until they reached the triangular area; at that point, their strips turned upward and ran along the north boundary line of the triangular area to Gardner Road. This point of entry became known as the northern entrance.

The record reflects the strips were developed with caliche into a common road that everyone used to access Gardner Road at both the northern and southern entrances. The record further reflects that when it rained, everyone used the northern entrance to access Gardner Road because the southern entrance was prone to becoming muddy and impassible. However, to access

the northern entrance, the family members had to cross over a portion of Dr. Nunneley's property,[1] and it is disputed whether all the family members had permission to use this portion of Dr. Nunneley's property. According to Timothy, when the family divided the tracts among each other, Dr. Nunneley granted the Medinas and Stacy and Miriam Bowers an easement over a portion of her property necessary to access the northern entrance. This portion of property was a developed road that lead to the northern entrance. It became known as the Nunneley easement, and it ran along the portion of Stacy and Miriam Bowers's strip of land above the triangular portion of land owned by Timothy. According to Timothy, the ongoing use of the Nunneley easement was conditioned on the Medinas and Stacy and Miriam Bowers' maintenance of the easement.

In 2007, Tracy asked Timothy whether he could use a portion of the triangular area that abutted Gardner Road near the southern entrance. At the time, neither Tracy nor Timothy lived on their tracts, and Tracy was beginning the process of building a road and dwelling on his 25-acre tract. However, the large trucks carrying construction materials were unable to access Tracy's 25-acre tract using the northern entrance or the caliche road leading up to the southern entrance. According to Timothy, he granted Tracy temporary permission to use part of the triangular portion of his land so the trucks could utilize the southern entrance and access Tracy's property. Thereafter, Tracy hired a contractor to build a cement bridge in the triangular area on Timothy's property for the trucks to use. The record reflects Tracy, Stacy, and the Medinas each signed contracts relating to the construction of the cement bridge. The record further reflects the Medinas paid for one-fourth of the construction cost of the cement bridge. According to the Medinas, they did not know whether Timothy was involved in any of the decisions concerning the construction of the cement bridge. Timothy, however, contends it was his understanding that he granted only

---

[1] Dr. Nunneley maintained ownership of the tract of land between the 62.027-acre property and Gardner Road

Tracy temporary access to his property, and he was unaware Tracy worked with Stacy and the Medinas to construct the cement bridge. In fact, Timothy did not see the cement bridge until four years after it was completed.

After the cement bridge was built, the Medinas, Tracy and Rachel Bowers, and Stacy and Miriam Bowers used the cement bridge to access the southern entrance. In order for the Medinas to use the bridge, they drove along their 20-foot strip and then traveled across a portion of Timothy's property to access the bridge. The record reflects that by the time the Medinas began crossing Timothy's property to access the bridge, the Nunneley easement had expired because no one maintained or used it. In fact, the Millers, who had bought the property from Dr. Nunneley, relocated their fence line, which physically terminated everyone's access to the Nunneley easement.

On January 7, 2013, Timothy sent the Medinas a letter, demanding they stop trespassing on his property. According to Timothy, the Medinas were trespassing each time they utilized the southern entrance. Timothy alleged the trespass included "not only the large triangular section of [his] property abutting [Gardner Road] which includes a large portion of the concrete bridge, but also portions of [his] property stretching from the triangular portion back to the rectangular portion of [his] property."

When the Medinas refused to comply with Timothy's request, Timothy filed suit against the Medinas asserting a trespass to try title claim and a declaratory judgment claim under the Texas Uniform Declaratory Judgments Act (UDJA). Timothy also sought injunctive relief. In his UDJA action, Timothy sought a declaration that the Medinas had no valid easement or prescriptive rights to use any portion of his property as well as attorney's fees. With regard to his trespass to try title action, Timothy asserted the Medinas used his property without his permission each time they used

a portion of the cement bridge to access the southern entrance and a portion of his 20-foot strip located near his rectangular portion of property.

The Medinas answered and counterclaimed for a declaration that they have a right to an easement over the portion of Timothy's property that would give them access to Gardner Road. The Medinas also asserted several affirmative defenses, including estoppel, waiver, statute of limitations, statute of frauds, laches, right of ingress and egress, easement by estoppel, implied easement, easement by prescriptive use, adverse possession, prior use easement, and easement from implied necessity.

The case was subsequently tried to the court, and after a four-day bench trial, the trial court granted Timothy declaratory and injunctive relief. Specifically, the trial court declared the Medinas had "no validly existing easement or prescriptive rights" over Timothy's property to access Gardner Road at the southern entrance. The trial court further found the Medinas committed trespass, awarding Timothy $1.00 in nominal damages as well as attorney's fees pursuant to the UDJA. Thereafter, the Medinas perfected this appeal.

## ANALYSIS

On appeal, the Medinas raise eight issues for our review. They first contend the trial court erred in granting "[Timothy's] relief under the [UDJA] as [Timothy] did not provide factually or legally sufficient evidence to produce the essential elements of his Trespass to Try Title Claim." The Medinas further contend the trial court erred in finding they did not establish their affirmative defenses of easement by estoppel, necessity, or by prescription over the portion of Timothy's property they needed to use to access the southern entrance. In the alternative, the Medinas argue the trial court erred by excluding certain evidence and finding Dr. Nunneley did not grant them the right to ingress/egress across the portion of Timothy's property they needed to use to access the southern entrance. In addition to these arguments, the Medinas argue the trial court erred: (1)

by rendering a judgment that is substantively defective; (2) finding the designated responsible third party, Tracy, did not cause or contribute to Timothy's damages; (3) excluding evidence and testimony of two witnesses based on unfair surprise and prejudice; (4) and awarding attorney's fees and costs to Timothy. Finally, the Medinas contend Timothy's claims are barred by limitations.

### *Easement by Necessity*

Here, the crux of this appeal centers on whether the Medinas have a right to cross over Timothy's property to access Gardner Road at the southern entrance. We therefore begin our analysis by determining whether the trial court erred in finding the Medinas did not have an easement or any prescriptive rights over Timothy's property. Specifically, we begin with the Medinas' assertion that the trial court erred in finding they do not have an easement by necessity over the portion of Timothy's property they need to use to access Gardner Road at the southern entrance.

### *Standard of Review and Applicable Law*

Whether a party is entitled to an easement by necessity is a question of law that we review de novo. *Staley Family P'ship, Ltd. v. Stiles*, 483 S.W.3d 545, 548 (Tex. 2016). A conclusion of law will be reversed if it is erroneous as a matter of law. *Id.*

To establish an easement by necessity, the claimant must show: (1) unity of ownership of the dominant and servient estates prior to severance; (2) necessity of a roadway; and (3) existence of the necessity at the time of the severance of the two estates. *Id.* Whether these requirements are met is determined at the time of severance of the alleged dominant and servient estates. *Ingham v. O'Block*, 351 S.W.3d 96, 102 (Tex. App.—San Antonio 2011, pet. denied); *Miller v. Elliott*, 94 S.W.3d 38, 43 (Tex. App.—Tyler 2002, pet. denied).

It is well established that if a claimant has another way to access the roadway from his own property, then he cannot claim an easement by necessity. *Crone v. Brumley*, 219 S.W.3d 65, 68 (Tex. App.—San Antonio 2006, pet. denied); *Scott v. Cannon*, 959 S.W.3d 712, 721 (Tex. App.—Austin 1998, pet. denied); *Daniel v. Fox*, 917 S.W.2d 106, 111 (Tex. App.—San Antonio 1996, writ denied). The fact that an alternate route would be inconvenient or expensive does not justify imposing an easement by necessity. *Scott*, 959 S.W.3d at 721. "However, an easement by necessity is not defeated by proof that the party seeking the easement has 'a mere license to use a way across the land' of another." *Crone*, 219 S.W.3d at 68 (quoting *Bains v. Parker*, 143 Tex. 57, 182 S.W.2d 397, 399 (1944)). Rather, the party seeking to establish an easement by necessity must prove that he has no other legal access to his property. *Id.*

*Application*

As the parties seeking the easement by necessity, the Medinas had the burden to establish all elements of that claim. *See Stiles*, 483 S.W.3d at 548. Here, the parties dispute the third element – whether a necessity existed at the time of severance. According to the Medinas, a necessity existed when the tracts were severed because at that time, neither the northern entrance nor the Nunneley easement existed. The Medinas contend the only way for everyone to access Gardner Road was by the southern entrance, requiring them to cross a portion of Timothy's property, including the portion now containing the cement bridge. Timothy, on the other hand, contends the northern entrance and the Nunneley easement existed at the time of severance, and thus, the Medinas had an alternate route.

Here, it is undisputed that access to the northern entrance depended on use of the Nunneley easement, and it is undisputed that the Nunneley easement was located on Dr. Nunneley's property. Assuming the northern entrance and Nunneley easement were in existence at the time of the severance, the record establishes that at most, the alternate route suggested by Timothy was only

temporary as it depended on the conditions placed on the Nunneley easement. *See Garcia v. Gonzalez*, No. 04-95-00971-CV, 1996 WL 425995, at *4 (Tex. App.—San Antonio July 31, 1996, no pet.) (mem. op.) (describing alternate route as temporary when route depended on conditions placed on use of route). According to Timothy, the ongoing use of the Nunneley easement was conditioned on proper maintenance. *See id*. Moreover, because access to the northern entrance was dependent on use of the Nunneley easement located on Dr. Nunneley's property, Timothy's suggested route was not an alternate route over the Medinas' property. *See id*. (holding route not alternate route when not across appellee's own land); *Sentell v. Williamson County*, 801 S.W.2d 220, 223 (Tex. App.—Austin 1990, no writ) (describing alternate routes as routes over one's own property). Instead, the record shows the severance of the land by the seven family members after its purchase from Dr. Nunneley completely cut off the Medinas' access to Gardner Road, making it landlocked and dependent on temporary access to the northern entrance. Because the Medinas had no legal right to access the Nunneley easement to the northern entrance, we conclude the temporary route suggested by Timothy was not an alternate route in existence at the time of severance. *See Garcia*, 1996 WL 425995, at *4; *Sentell v. Williamson County*, 801 S.W.2d at 23. We therefore hold no alternate route giving the Medinas legal access to Gardner Road existed at the time of severance, and as a result, the Medinas have an easement by necessity over the portion of Timothy's property needed to access Gardner Road by the southern entrance.

Having determined the trial court erred in finding the Medinas did not have an easement by necessity, we need not address the Medinas' remaining challenges to the sufficiency of the evidence, exclusion of the evidence, and defects in the judgment. We now turn our attention to the Medinas' challenge to the trial court's award of attorney's fees.

### *Attorney's Fees*

On appeal, the Medinas challenge the trial court's award of attorney's fees to Timothy based on the UDJA. According to the Medinas, this award is erroneous because Timothy's declaratory judgment action duplicated his trespass-to-try-title claim for which attorney's fees are unavailable.

### *Standard of Review and Applicable Law*

We review a trial court's award of attorney's fees under the UDJA for an abuse of discretion. *Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 163 (Tex. 2004); *Florey v. Estate of McConnell*, 212 S.W.3d 439, 447 (Tex. App.—Austin 2006, pet. denied). Under the UDJA, a court "may award ... reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. However, a party may not recover attorney's fees under the UDJA when the only issues, aside from attorney's fees, concern trespass to try title or clearing of title. *See Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 926 (Tex. 2013); *Florey*, 212 S.W.3d at 448. A trespass-to-try-title lawsuit is an action generally used to clear problems in chains of title or to recover possession of land unlawfully withheld from a rightful owner. *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004). However, no statute provides for the recovery of attorney's fees for a trespass to try title claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(c); *Martin*, 133 S.W.3d at 264–65; *1–10 Colony, Inc. v. Chao Kuan Lee*, 393 S.W.3d 467, 475 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (pointing out that UDJA and trespass-to-try-title statutes differ in pleading and proof requirements, and recovery of attorney's fees).

### *Application*

Here, the Medinas are correct in that the only basis upon which Timothy could recover attorney's fees is his UDJA claim so long as it was not based solely on his trespass to try title

claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(c); *Martin*, 133 S.W.3d at 264–65; *1–10 Colony, Inc.*, 393 S.W.3d at 475. However, because we have determined that the trial court erred in granting declaratory relief in favor of Timothy, we need not determine whether the trial court erred in its award of attorney's fees to Timothy. *See Kachina Pipeline Co., Inc. v. Lillis*, 471 S.W.3d 445, 455 (Tex. 2015) (stating when an appellate court reverses a declaratory judgment, it may also reverse an attorney's fee award). Rather, we reverse the trial court's award of attorney's fees and remand the issue of attorney's fees to the trial court for further proceedings. *See id*.

## CONCLUSION

Because we hold the Medinas have an easement by necessity over Timothy's property, we reverse the judgment of the trial court and render judgment declaring the Medinas have a valid easement by necessity over Timothy's property. In light of our decision, we remand the cause to the trial court for reconsideration of the issue of attorney's fees.

Marialyn Barnard, Justice