

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-25-00005-CV

---

TODD HEATH, APPELLANT

V.

SUNSET CLIFF ESTATES ROAD AND GATE MAINTENANCE, INC., APPELLEES

---

On Appeal from the 424th District Court
Burnet County, Texas
Trial Court No. 54982, Honorable Evan Stubbs, Presiding

---

June 18, 2025

MEMORANDUM OPINION[1]

Before QUINN, C.J., and PARKER and DOSS, JJ.

This case raises vision of a road to nowhere and its availability as a basis for an easement by necessity. Todd Heath (Heath) sought such an easement down a 50-foot-wide strip of realty owned by Sunset Cliff Estates Road and Gate Maintenance, Inc. (Sunset). He had been using the private strip as a means of accessing Burnet County Road 137 from his purportedly landlocked acreage. Yet, Sunset deemed him a

---

[1] Because this matter was transferred from the Third Court of Appeals, we apply its precedent when it conflicts with that of the Seventh Court of Appeals. TEX. R. APP. P. 41.3.

trespasser and sued. Eventually, the trial court entered summary judgment finding Heath a trespasser when attempting to traverse the strip without approval of Sunset. Heath appealed, contending that the evidence created a material issue of fact regarding the existence of the aforementioned easement. In his view, if sufficient evidence created such a material fact issue then the trial court erred in deeming him a trespasser. Supreme Court precedent discussed below compels us to affirm.

### Background

We forego discussion of the evidentiary minutia provided the trial court and mention only the circumstances relevant to and controlling our particular disposition of the appeal. Those circumstances follow.

The various parcels of realty at issue abut or lie within the vicinity of Lake Buchanan. Once owned by Casner, the latter apparently sold them and others over the period of 1936 to 1939. Years later, Heath acquired a 55-acre tract (Lake Shore Subdivision) which had been surrounded by other of Casner's land, which land Sunset eventually acquired (Sunset acreage). The private road or strip at issue allowed access to the Sunset property. Additionally, when Heath acquired Lake Shore, the only alleged access to the nearest public road (County Road 137) lay over the aforementioned 50-foot-wide strip of Sunset's.

This circumstance, i.e., the lack of direct access from Lake Shore to a public road, allegedly existed when Casner sold the property back in the 1930's. At that time, the Burnet Lead Mine Road served as the nearest public way. Yet, between Lead Mine Road and Lake Shore stood the parcel eventually acquired by Sunset and another tract owned by Durst or his successors. With this said, we turn to the disposition of the appeal.

2

***Disposition***

Over a century ago, our Supreme Court recognized "that a necessity easement results when a grantor, in conveying or retaining a parcel of land, fails to expressly provide for a means of accessing the land." *Hamrick v. Ward*, 446 S.W.3d 377, 382 (Tex. 2014). Under those circumstances, "courts will imply a roadway easement to facilitate continued productive use of the landlocked parcel, rather than rigidly restrict access." *Id.* The easement, however, is temporary; that is, it remains until the necessity ends. *Id.* Furthermore, its existence depends upon the claimant's demonstrating: 1) a unity of ownership of the alleged dominant and servient estates prior to severance; 2) the desired access is a necessity and not a mere convenience; and 3) the necessity existed at the time the two estates were severed. *Id.* This entails the claimant's establishing both a historical necessity at the time of severance and its continuance to the present. *Id.*[2]

As later explained by the Supreme Court, the easement is not lost by the fact that the claimed right of way did not open to a public highway. *Staley Fam. Partn. V. Stiles*, 483 S.W.3d 545, 549 (Tex. 2016). Yet, the claimant must ultimately be able to access a public way by means of the desired easement. *Id.* That is, necessity depends on the easement's being needed to provide access to a public roadway, and no such necessity exists if the easement does not result in such access. *Id.* And should that be the situation, the easement is not "necessary because it does not facilitate use of the landlocked property." *Id.* And, this takes us back to our opening statement about a road leading to

---

[2] "Whether a property owner is entitled to an easement by necessity is a question of law, although underlying factual issues may need to be resolved in order to reach the legal question." *Staley Fam. Partn. v. Stiles*, 483 S.W.3d 545, 548 (Tex. 2016).

nowhere. Such a road may lead to self-discovery, as encountered by Ozzy Osborne in "Road to Nowhere," but they do not result in an easement of necessity.

So, in effect, the claimant's burden also includes establishing that, at the time of historical severance and thereafter, the right of way sought led to a public roadway. If nowhere else, this is where we find Heath's effort lacking.

Because Heath asserted the claimed easement as an affirmative defense barring entry of summary judgment for Sunset, the task fell upon him to present competent evidence creating a material issue of fact upon each element of his claim. *D & KW Family, L.P. v. Bidinger*, No. 01-08-00260-CV, 2009 Tex. App. LEXIS 4202, at *12 (Tex. App.— Houston [1st Dist.] June 11, 2009, pet. denied) (mem. op.). Missing from that effort was evidence that when Casner sold Lake Shore and the Sunset acreage, an easement across the latter would lead to a public roadway, that is, Lead Mine Road. Again, the Durst parcel stood between Sunset acreage and Lead Mine Road. Moreover, no evidence of record suggests, much less illustrates, that Durst permitted Casner or Heath's predecessors in title to cross his lands to access Lead Mine Road when Lake Shore and the Sunset acreage was severed. Nor did evidence of record indicate that Casner or Heath's predecessors held some right of way or easement over Durst's realty at the time. And, Heath does not suggest otherwise.

Instead, Heath argues that he met his burden since "as of the Date of Severance, a person could travel from the Dominant Estate [Lake Shore], through the Historical Servient Estate [Sunset acreage], and then briefly through lands owned by a third party [Durst] located between the Historical Servient Estate and the Burnet Lead Mines Road, and thereby access a public roadway: the Burnet Lead Mines Road." And, given that the

4

Durst property owners granted an easement over the property sometime *after* Casner severed the two estates, "a reasoned basis exists to infer that the Historical Servient Estate provided a means of access to the Burnet Lead Mine Road on the Date of Severance." His analysis suffers a fatal defect, however. The pertinent snapshot is taken at the time of the severance. As said in *Staley*, "[b]ut as the court of appeals held, establishing the 'necessity' part of an easement by necessity requires, in part, proof that *at the time the dominant and servient estates were severed*, the necessity arose for an easement across the servient estate in order that the dominant estate could in some manner gain access to a public road." *Staley Fam. Partn.*, 483 S.W.3d at 549 (emphasis added); *see also Bains v. Parker*, 182 S.W.2d 397, 399-400 (Tex. 1944) (stating that if Bains had a right to pass over any of the surrounding tracts "at the time of the conveyance to Parker" then there was no easement reserved by implication in the deed). The highlighted passage is clear; "at the time" of severance means "at the time of severance." One cannot reasonably read into the clause the fudge factor Heath invites us to adopt. So it matters not that those owning the Durst lands may have granted someone an easement months after Casner severed Lake Shore and the Sunset acreage.

So, in short, Heath failed to carry his burden to establish a material issue of fact as to each element of the easement sought. This meant the trial court was not required to withhold summary judgment based on Heath's alleged affirmative defense. Thus, we overrule his issue and affirm the trial court's final judgment.


Brian Quinn
Chief Justice


5